This matter comes before the court on appeal from the Lucas County Court of Common Pleas wherein a three-judge panel found appellant, William A. Thomas, guilty of aggravated murder. Appellant received a death sentence. On appeal, appellant sets forth the following assignments of error:
 "I. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY FAILING TO FIND THAT APPELLANT WAS NOT COMPETENT TO STAND TRIAL."
 II. APPELLANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS TRIAL ATTORNEYS DID NOT ASK THE TRIAL COURT TO HOLD A HEARING OR ORDER A PSYCHIATRIC EXAMINATION TO DETERMINE WHETHER APPELLANT WAS COMPETENT TO STAND TRIAL.
 III. APPELLANT'S DECISION TO WAIVE A JURY AND BE TRIED BY A THREE-JUDGE PANEL CANNOT BE CONSIDERED VOLUNTARY, KNOWING, AND INTELLIGENT WHEN THE COURT DID NOT EXPLAIN THE IMPLICATIONS OF THE WAIVER TO HIM IN DETAIL AND IN PARTICULAR DID NOT EXPLAIN THAT VIRTUALLY ANY ERROR WHICH MIGHT BE COMMITTED BY A PANEL WILL BE CONSIDERED WAIVED FOR APPELLATE PURPOSES.
 IV. BECAUSE APPELLANT'S JURY WAIVER WAS NOT JOURNALIZED, AND BECAUSE THE JUDGMENT ENTRY AUTHORIZING TRIAL BY A THREE-JUDGE PANEL WAS NOT PROPERLY EXECUTED, THE THREE-JUDGE PANEL HAD NO JURISDICTION TO TRY APPELLANT WITHOUT A JURY.
 V. THE TRIAL COURT ERRED IN FAILING TO ASK APPELLANT WHETHER HE (1) WAS AWARE THAT HE HAD AN ABSOLUTE RIGHT TO TESTIFY IN HIS OWN BEHALF, AND (2) KNOWINGLY, INTELLIGENTLY, AND PERSONALLY WAIVED THAT RIGHT.
 VI. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT BY PERMITTING A WITNESS FOR THE STATE TO RENDER AN EXPERT OPINION WHEN THAT WITNESS HAD NOT BEEN QUALIFIED AS AN EXPERT AS REQUIRED BY EVID.R. 702.
 VII. APPELLANT WAS DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL BY TRIAL COUNSEL'S FAILURE TO OBJECT TO THE TESTIMONY OF A STATE'S WITNESS WHO RENDERED AN EXPERT OPINION.
 VIII. PROSECUTORIAL MISCONDUCT DURING CLOSING ARGUMENT AT THE MITIGATION PHASE OF THE TRIAL DEPRIVED APPELLANT OF A FAIR SENTENCING DETERMINATION. SPECIFICALLY, THE PROSECUTOR:
 1. TREATED THE NATURE AND CIRCUMSTANCES OF THE OFFENSE AS AN AGGRAVATING FACTOR (MTR 263-265)
 2. CHARACTERIZED THE FUNCTIONS OF THE PARTIES IN THE COURTROOM IN SUCH A WAY AS TO INDICATE THAT DEFENSE COUNSEL ARE UNETHICAL (MTR 277); AND
 3. URGED THE COURT NOT TO CONDUCT ITS OWN WEIGHING OF AGGRAVATING AND MITIGATING FACTORS BUT TO DEFER TO THE DECISIONS OF THE SUPREME COURT OF OHIO (MTR 298-299, 301).
 IX. THE THREE-JUDGE PANEL VIOLATED ITS DUTY AND ALSO THE CONSTITUTIONS OF THE UNITED STATES AND OF THE STATE OF OHIO BY IMPOSING A SENTENCE OF DEATH BY MISWEIGHING AGGRAVATING CIRCUMSTANCES AGAINST MITIGATING FACTORS AND BY WEIGHING THE NATURE AND CIRCUMSTANCES OF THE OFFENSE AGAINST THE MITIGATING FACTORS.
 X. INSOFAR AS ANY OF THE ERRORS COMPLAINED OF HEREIN ARE DEEMED NOT TO HAVE BEEN PRESERVED PROPERLY BY TRIAL COUNSEL, COUNSEL PROVIDED APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL TO WHICH HE IS CONSTITUTIONALLY ENTITLED. (SIC)
 XI. THE TRIAL COURT ERRED IN VIOLATION OF APPELLANT'S RIGHTS UNDER THE CONSTITUTIONS OF THE UNITED STATES AND THE STATE OF OHIO WHEN IT REFUSED HIS MOTION TO DISMISS THE DEATH SPECIFICATIONS.
 XII. THE REQUIREMENT IMPOSED BY THE SUPREME COURT OF OHIO THAT MANDATED PROPORTIONALITY REVIEW OF DEATH SENTENCES INCLUDE IN THE SAMPLE TO BE REVIEWED ONLY THOSE CASES WHERE THE PUNISHMENT OF DEATH WAS IMPOSED IS DEFECTIVE AND WRONG IN THEORY AND IN PRACTICE AND DENIES A CAPITALLY SENTENCED PERSON HIS RIGHTS UNDER THE FIFTH, SIXTH, EIGHTH, NINTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND UNDER SECTIONS 1, 2, 5, 9, 10, 16, AND 20, ARTICLE I
OF THE OHIO CONSTITUTION.
 XIII. A DEATH PENALTY LAW WHICH HAS NOT BEEN ENFORCED IN OVER THIRTY-FIVE YEARS IS, BY DEFINITION CRUEL AND UNUSUAL.
 XIV. THE DEATH PENALTY IN THIS CASE CAN ONLY BE VIEWED AS FREAKISH, CAPRICIOUS, AND ARBITRARY.
 XV. THE TRIAL COURT ERRED IN CONCLUDING THAT THE AGGRAVATING CIRCUMSTANCE, THAT THE AGGRAVATED MURDER IN THIS CASE WAS COMMITTED IN THE COURSE OF AN AGGRAVATED ROBBERY AND THAT THE DEFENDANT WAS THE PRINCIPAL OFFENDER IN THE AGGRAVATED MURDER, OUTWEIGHED THE MITIGATION FACTORS BEYOND A REASONABLE DOUBT.
 XVI. THE DEATH SENTENCE IN THIS CASE IS NEITHER APPROPRIATE NOR IN PROPORTION TO THE DEATH SENTENCE IN OTHER CASES."
At approximately 4:00 a.m. on November 23, 1994, Sandra Connolly, on her way to work, walked out of her house and got into her car. Connolly had lived behind the residence of Florence "Molly" Newbirt for over thirty years. Connolly's car was facing Mrs. Newbirt's backyard. When Connolly turned on her headlights, she noticed that Mrs. Newbirt's back door was wide open. Meanwhile, Connolly's daughter, Deborah Connolly, was also leaving for work in a separate car. Both women worked at the same restaurant. Both women were concerned for Mrs. Newbirt's safety after noticing the open door. They decided to call the police once they reached the restaurant.
At approximately 4:05 a.m. on November 23, 1994, Toledo Police Sergeants Robert Condon and Gerald Lazette responded to a dispatcher's call of "suspicious property conditions" at 223 Hanover Street, the residence of Mrs. Newbirt. They parked their car in front of the house. Finding the front of the house secure, they walked to the back. There they found an open screen door leading to an enclosed back porch. As they walked onto the porch they noticed that the door to the house was also open. The Sergeants yelled "police" but heard no response. They then proceeded into the kitchen. On the far kitchen wall they saw a phone that had been partially ripped from the wall. At that point, concerned about a burglar that may still be in the house, the Sergeants called for back-up assistance.
Continuing through the kitchen and into the dining room, the Sergants saw that the basement door lock had been broken. They also noticed a pair of broken louver doors. To his right, Sergeant Condon saw a bedroom. Even before he entered the room he could see large quantities of blood. In the bedroom, he found eighty-seven year-old Florence "Molly" Newbirt lying under a mattress. She had sustained several, severe blows to her head and was alive, but unconscious.
A claw hammer was found on the floor near Mrs. Newbirt. In the basement, the Sergants found a broken casement window. The broken glass was inside the basement. On the bottom basement stair, they found a black baseball hat with an embroidered automatic weapon on the front and the number "187". Sergeant Condon explained that "187", the number for homicide in the California penal code, is frequently found on wall graffiti painted by street gangs.
At the hospital, the victim's family told police about a neighborhood man who had performed odd jobs around Mrs. Newbirt's house and attempted to borrow money from her. Further investigation led police to a nearby residence located at 239 Hanover Street. Wesley Thomas, who lived at the house, identified the black baseball cap as an item he owned that was often worn by his uncle, appellant William Thomas. Thomas identified the claw hammer as a tool that was kept in a drawer at 239 Hanover Street. Appellant also lived at 239 Hanover Street. Wesley Thomas told police there had been a party at the house on the evening of November 22, 1994. Thomas remembered seeing the black baseball cap in appellant's hands during the party. All of the people at the party were drinking heavily. Appellant tried to borrow money from various people and became angry when no one would give him a loan. Appellant left the house sometime after midnight and before 6:00 a.m. on November 23.
James Lightner was asleep at approximately 2:30 a.m. on November 23, 1994 when he heard someone knocking loudly at his door. He got out of bed and opened his door to appellant. Lightner noticed that the lower portion of appellant's pants was covered in blood. Appellant claimed he had been in a fight with another man. Appellant also offered to sell Lightner a television set he claimed to have stolen. Lightner declined the television offer but agreed to drive appellant to another location. At trial, Lightner testified that the television looked like the one pictured on an owner's manual found in Mrs. Newbirt's home.
Toledo Police Officer Thomas Ross interviewed appellant after his arrest on November 25, 1994. Appellant told Ross he went to the Cherry Street Mission, a local homeless shelter, and turned in the clothes he had worn on November 23. Appellant explained to Ross that he did this because his clothes were old and soiled. Ross could see dried blood on appellant's shoes. When Ross asked appellant how the blood got on his shoes, appellant stated he did not remember. Appellant acknowledged he knew Mrs. Newbirt. When Ross asked appellant if he had broken into Mrs. Newbirt's house and attacked her, appellant responded: "[I]f I did something like that, I don't remember. I'm just sick from some bad drugs I got that night."
Mrs. Newbirt remained hospitalized as a result of the attack until her death approximately one month later on December 23, 1994. On December 30, 1994, appellant was indicted on one count of aggravated murder with two death penalty specifications of aggravated burglary and aggravated robbery, one count of aggravated burglary and one count of aggravated robbery. On November 1, 1995, a three-judge panel returned guilty verdicts on all counts and specifications charged in the indictment. Following a mitigation hearing, the panel unanimously sentenced appellant to death. Consecutive sentences were imposed for the other offenses.
Appellant's first two assignments of error will be considered together. In his first assignment of error, appellant contends the court erred in failing to sua sponte find appellant incompetent to stand trial. In his second assignment of error, appellant contends his trial counsel was ineffective for failing to raise the competency issue.
A defendant is presumed to be competent to stand trial unless he is proven otherwise by a preponderance of the evidence. R.C.2945.37(G). The United States Supreme Court in Dusky v.United States (1960), 362 U.S. 402, set forth the test for "competency" in the context of a criminal trial as "* * * whether [the accused] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational as well as a factual understanding of the proceedings against him." The Ohio Supreme Court has noted that even the presence of mental illness does not necessarily equate with incompetency. State v. Berry (1995), 72 Ohio St.3d 354, 362.
"The right to a hearing on the issue of competency rises to the level of a constitutional guarantee where the record contains `sufficient indicia of incompetence' such that an inquiry into the defendant's competency is necessary to ensure the defendant's right to a fair trial." Id. at 359, citing Dropev. Missouri (1975), 420 U.S. 162, Pate v. Robinson (1966),383 U.S. 375; State v. Bock (1986), 28 Ohio St.3d 108. The version of R.C. 2945.37(A), in effect at the time of appellant's trial, stated:
 "In a criminal action in a court of common pleas or municipal court, the court, prosecutor, or defense may raise the issue of the defendant's competence to stand trial. If the issue is raised before trial, the court shall hold a hearing on the issue as provided in this section. If the issue is raised after trial has begun, the court shall hold a hearing on the issue only for good cause shown."
The determination of whether or not good cause exists is within the sound discretion of the trial court. State v. Rahman
(1986), 23 Ohio St.3d 146. Relevant factors for the court to consider are any doubts counsel may have expressed regarding his client's competency, any evidence of irrational behavior, the defendant's demeanor during the trial, and any prior medical opinion concerning the defendant's competency. State v. Chapin
(1981) 67 Ohio St.2d 437, citing Pate v. Robinson, supra.
The record in this case is devoid of any "indicia of incompetency" or "good cause" to merit a competency hearing. At his arraignment, appellant politely answered the judge's questions regarding his legal representation. Specifically, appellant answered "yes" when asked if he wanted the judge to appoint a lawyer for him. After the judge made the appointment, appellant responded "thank-you your Honor." At various pre-trial hearings, the judge asked appellant's counsel if appellant understood everything that had been discussed. Counsel always answered affirmatively. During one pre-trial hearing, one of appellant's two attorneys asked for permission to leave so he could appear in another courtroom. The judge asked appellant if he would agree to be represented by only one of his attorneys for the rest of the hearing. Appellant told the judge that he would agree as long as one of the attorneys remained.
We find no evidence in this record to suggest that during trial, appellant had difficulty understanding the proceedings or that he was incapable of assisting his counsel in his defense. A thorough review of the transcripts reveals nothing unusual about appellant's behavior during his trial. We therefore conclude that the trial court did not err in failing to find appellant incompetent to stand trial.
The standard for evaluating an ineffective assistance of counsel claim was enunciated by the Supreme Court of Ohio inState v. Bradley (1989), 42 Ohio St.3d 136, paragraphs two and three of the syllabus, as follows:
 "2. Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. (State v. Lytle
[1976], 48 Ohio St.2d 391; Strickland v. Washington
[1984], 466 U.S. 668, followed.)
 "3. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors. the result of the trial would have been different."
Further, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance * * *." Bradley, supra, at 142 quoting Strickland,supra, at 689. Ohio presumes a licensed attorney is competent.Vaughn v. Maxwell (1965), 2 Ohio St.2d 299. Counsel will not be deemed ineffective merely because a defendant is convicted and not acquitted. State v. Hunt (1984), 20 Ohio App.3d 310, 311.
Given our previous determination that the record in this case lacks "indicia of incompetency," it cannot be said that counsel's failure to request a competency hearing fell below an objective standard of reasonable representation. Accordingly, appellant's first and second assignments of error are found not well-taken.
In his third assignment of error, appellant contends he did not voluntarily waive his right to a jury trial.
R.C. 2945.05 states:
 "In all criminal cases pending in courts of record in this state, the defendant may waive a trial by jury and be tried by the court without a jury. Such waiver by a defendant, shall be in writing, signed by the defendant, and filed in said cause and made a part of the record thereof. It shall be entitled in the court and cause, and in substance as follows: "I _______________, defendant in the above cause, hereby voluntarily waive and relinquish my right to a trial by jury, and elect to be tried by a Judge of the Court in which the said cause may be pending. I fully understand that under the laws of this state, I have a constitutional right to a trial by jury.
 Such waiver of trial by jury must be made in open court after the defendant has been arraigned and has had opportunity to consult with counsel. Such waiver may be withdrawn by the defendant at any time before the commencement of the trial."
Appellant signed two jury waivers in this case. Both waivers conformed to the dictates of R.C. 2945.05. Appellant now contends that his waivers were not executed voluntarily. Specifically, appellant contends that the judge must engage in an independent colloquy with a defendant before accepting his or her waiver of a jury trial. We disagree on the authority ofState v. Jells (1990) 53 Ohio St.3d 22. In Jells, the Ohio Supreme Court held:
 "There is no requirement in Ohio for the trial court to interrogate a defendant in order to determine whether he or she is fully apprised of the right to a jury trial. The Criminal Rules and the Revised Code are satisfied by a written waiver, signed by the defendant, filed with the court, and made in open court, after arraignment and opportunity to consult with counsel." Id. at 25-26.
 Appellant's third assignment of error is found not well-taken.
In his fourth assignment of error, appellant contends that the three-judge panel lacked jurisdiction to try him without a jury. First, appellant contends that the panel lacked jurisdiction because one of the two jury waivers in this case was not journalized. This argument is without merit. Appellant acknowledges that the October 12, 1995 jury waiver was journalized. The jury waiver file stamped October 30, 1995 was not journalized. As the October 30, 1995 jury waiver is identical to the October 12 jury waiver, it is merely superfluous and need not be journalized.
Second, appellant contends that the three-judge panel lacked jurisdiction in that the order establishing the composition of the panel was not properly executed.
R.C. 2945.06 states in pertinent part:
 "Jurisdiction of judge when jury trial is waived; three-judge court.
 In any case in which a defendant waives his right to trial by jury and elects to be tried by the court under section 2945.05 of the Revised Code, any judge of the court in which the cause is pending shall proceed to hear, try, and determine the cause in accordance with the rules and in like manner as if the cause were being tried before a jury. If the accused is charged with an offense punishable with death, he shall be tried by a court to be composed of three judges, consisting of the judge presiding at the time in the trial of criminal cases and two other judges to be designated by the presiding judge or chief justice of that court, and in case there is neither a presiding judge nor a chief justice, by the chief justice of the supreme court."
The judgment entry establishing the three-judge panel in this case was signed by a Judge on the Domestic Relations bench of the Lucas County Court of Common Pleas. Appellant contends that the order is void because the signing judge is not a "General Division" Judge of the Lucas County Court of Common Pleas. Once again, we find no merit to this argument. We find no authority in R.C. 2945.06 or elsewhere to support appellant's contention that the order designating a three-judge panel must be signed by a "general division" common pleas judge. Accordingly, appellant's fourth assignment of error is found not well-taken.
In his fifth assignment of error, appellant contends that the three-judge panel erred in failing to determine, on the record, that (1) appellant knew he had a constitutional right to testify on his own behalf and (2) that appellant had knowingly waived that right.
This court previously addressed the same issue in Statev. DeShelter (Dec. 31. 1998), Lucas App. No. L-98-1021, unreported. This court held:
 "We have found no Ohio court that has imposed a duty on a trial court to sua sponte question a defendant on the record, during trial, to ensure that he is knowingly and voluntarily waiving his right to testify. To the contrary, courts of appeal in Ohio have affirmatively stated that a trial court has no such duty. State v. Oliver (1995), 101 Ohio App.3d 587, 592-593; State v. Gregory, (Oct. 31, 1997), Lucas App. No. L-96-190, unreported; State v. Ballard, 1997 Ohio App. LEXIS 4390 (Sept. 30, 1997), Lucas App. No. L-95-394, unreported; State v. Jones, (Sept. 30, 1993), Cuyahoga App. No. 63836, unreported; State v. Morrison, (June 2, 1992), Franklin App. No. 91AP-1326, unreported.
Based on the foregoing, appellant's fifth assignment of error is found not well-taken.
In his sixth assignment of error, appellant contends the court erred in allowing a police detective, who was not qualified as an expert witness, to testify regarding blood spatter evidence. Specifically, Toledo police detective Chad Culpert testified that the blood spatter on the bedroom wall of the victim's bedroom could have resulted from the victim being beaten with a physical object. Appellant argues that this testimony allowed the panel to infer that the hammer found at the scene was the murder weapon and, because it came from the Thomas home, that appellant was the murderer. At trial, appellant did not object to this testimony.
"A claimed error not objected to will not be noticed on appeal unless it rises to the level of plain error. See State v.Underwood (1983), 3 Ohio St.3d 12; State v. Cooperrider (1983),4 Ohio St.3d 226. To rise to the level of plain error, it must appear on the face of the record not only that the error was committed, but that except for the error, the result of the trial clearly would have been otherwise and that not to consider the error would result in a clear miscarriage of justice. Underwood,supra; Cooperrider, supra." State v. Bock (1984), 16 Ohio App.3d 146,150.
"Error in the admission of evidence in criminal proceedings is harmless if there is no reasonable possibility that the evidence may have contributed to the accused's conviction." State v. Bayless
(1976), 48 Ohio St.2d 73, paragraph seven of the syllabus, vacated on other grounds, (1978), 438 U.S. 911, 98 S. Ct. 3135,57 L. Ed.2d 1155.
We find that the admission of Detective Culpert's testimony was harmless error, to the extent it was error at all, given the testimony of Forensic Pathologist, Dr. Diane Scala-Barnett. Dr. Scala-Barnett conducted an autopsy on the body of Mrs. Newbirt. She testified that Mrs. Newbirt sustained depressed skull fractures characteristic of the type caused by objects such as baseball bats, bricks, hammers or pipes. Accordingly, appellant's sixth's assignment of error is found not well-taken.
In his seventh assignment of error, appellant contends that his counsel was ineffective in failing to object to the testimony of Detective Culpert. Having already determined that appellant suffered no prejudice as a result of Detective Culpert's testimony, appellant's seventh assignment of error is found not well-taken.
In his eighth assignment of error, appellant alleges prosecutorial misconduct during the mitigation phase of his trial. The test for prosecutorial misconduct is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the accused thereby denying him a fair trial. State v. Smith (1984), 14 Ohio St.3d 13, 14-15. This argument will be reviewed under the plain error standard as appellant failed to initially object below. It follows that the alleged prosecutorial misconduct constitutes plain error only if it is clear that appellant would not have been convicted in the absence of the improper comments. See State v. Slagle (1992),65 Ohio St.3d 597, 605.
Appellant first alleges that the prosecutor erred in treating the nature and circumstances of the offense as an aggravating factor. The prosecutor specifically stated:
 "As a part of the nature and circumstances of this horrendous crime, I'm not going to reiterate the details, the medical evidence that you have before you, the photographic evidence, the physical evidence that you heard from Dr. Barnett, but this murder, your Honors, this murder is the essence of depraved and evil behavior, and that's what makes the death penalty necessary."
R.C. 2929.03(D) states in pertinent part:
 "The court * * * shall consider any evidence raised at trial that is relevant to the aggravating circumstances the offender was found guilty of committing or to any factors in mitigation of the imposition of the sentence of death, shall hear testimony and other evidence that is relevant to the nature and circumstances of the aggravating circumstances the offender was found guilty of committing, the mitigating factors set forth in division (B) of section 2929.04 of the Revised Code, and any other factors in mitigation of the imposition of the sentence of death, * * * Upon consideration of the relevant evidence raised at trial, the testimony, other evidence, statement of the offender, arguments of counsel, and, if applicable, the reports submitted pursuant to division (D)(1) of this section, the trial jury, if the offender was tried by a jury, shall determine whether the aggravating circumstances the offender was found guilty of committing are sufficient to outweigh the mitigating factors present in the case. If the trial jury unanimously finds, by proof beyond a reasonable doubt, that the aggravating circumstances the offender was found guilty of committing outweigh the mitigating factors, the trial jury shall recommend to the court that the sentence of death be imposed on the offender. * * *"
The Ohio Supreme Court stated in State v. Wogenstahl (1996),75 Ohio St.3d 344, 355, "* * * it is perfectly acceptable for the state to present arguments concerning the nature and circumstances of the offense." However, "* * * it is improper for prosecutors in the penalty phase of a capital trial to make any comment * * * that the nature and circumstances of the offense are `aggravating circumstances' * * *" as those words are used in R.C. 2929.04(A)(1) through (8). Id. at paragraph two of the syllabus. Appellant's argument is without merit. It is clear from the panel's opinion that they correctly identified the aggravating circumstances to be that the aggravated murder occurred in the course of an aggravated robbery and an aggravated burglary. In State v. Green (1993)66 Ohio St.3d 141, 149, the Ohio Supreme Court held that when the trial court correctly identifies the statutory aggravating factors, it will be inferred that the trial court "understood the difference between statutory aggravating circumstances and facts describing the nature and circumstances of the offense." citing State v. Wiles
(1991), 59 Ohio St.3d 71, 90, quoting State v. Sowell (1988),39 Ohio St.3d 322, 328. The prosecutor in this case merely asked the panel to recall the evidence that was presented at trial. The prosecutor never alleged that the "nature and circumstances" of the offense constituted an "aggravating factor" as that term is used in R.C. 2929.04(A)(1) through (8).
Appellant next contends that the prosecutor committed misconduct by misrepresenting the roles of the prosecutors and defense attorneys. Specifically, appellant alleges that the prosecutor purposely suggested that the prosecutors were honest whereas the defense attorneys were not. The prosecutor stated:
 "None of us envy your jobs, or a jury in a situation like this, but you have that job, as all of us here in this system of justice; Mr. Sniderhan and I to prosecute honestly, ethically and to the best of our abilities with the evidence we have through the investigators; Mr. Cimerman and Mr. Helmick to zealously advocate and defend their client; and the three of you to be objective, to use the evidence before you, and combine it with your unique understanding of the law."
A three-judge panel is more than capable of recognizing the fact that a "zealous representation" is not the same as a "dishonest representation." (A three-judge panel is "presumed to know the law." State v. Davis (1992), 63 Ohio St.3d 44, 48.) Therefore, this argument is also without merit.
Finally, appellant contends that the prosecutor erred in asking the panel to accord the mitigating factors in this case the same weight as the Ohio Supreme Court accorded to similar mitigating factors in State v. Green, Id. Our review of the prosecutor's argument shows that she simply compared the facts in this case to the facts in the Green case in an effort to support her position. Prosecutors are entitled to fervently argue their case and are afforded wide latitude in summation. State v. Hart
(1994), 94 Ohio App.3d 665, 671. Finding that none of the alleged instances of prosecutorial misconduct rise to the level of plain error, appellant's eighth assignment of error is found not well-taken.
In his ninth assignment of error, appellant contends that in imposing a death sentence, the three-judge panel misweighed the aggravating circumstances against the mitigating factors. Appellant first contends that the panel erred in weighing the aggravating factors against the mitigating factors individually as opposed to collectively. Given the fact that the panel found there to be only one mitigating factor (appellant's limited intellectual abilities and aptitude) to weigh against the aggravating circumstances, we find no error.
Appellant further contends that the panel treated the "nature and circumstances" of the offense as an aggravating circumstance. Based on our disposition of appellant's eighth assignment of error, we find this argument to be without merit. Finally, appellant contends that the panel "ignored" the mitigating factor that giving appellant the maximum consecutive sentences would have rendered him first eligible for parole at age eighty-two. This argument is also without merit as the panel is not "necessarily required to accept as mitigating everything offered by the defendant and admitted." State v. Steffen
(1987), 31 Ohio St.3d 111, certiorari denied (1988), 485 U.S. 916,108 S.Ct. 1089, paragraph two of the syllabus. Accordingly, appellant's ninth assignment of error is found not well-taken.
In his tenth assignment of error, appellant contends that his counsel was ineffective in failing to object to the alleged errors we have reviewed under the plain error standard. Because we have determined that none of these errors affected the ultimate outcome of this trial, appellant's tenth assignment of error is found not well-taken.
In his eleventh assignment of error, appellant contends that the death penalty is unconstitutional. The Ohio Supreme court has repeatedly held that Ohio's death penalty law is constitutional. State v. Bey (1999), 85 Ohio St.3d 487, 501, citing State v. Jenkins (1984), 15 Ohio St.3d 164; State v. Mauer
(1984), 15 Ohio St.3d 239; State v. Buell (1986), 22 Ohio St.3d 124; State v. Zuern (1987), 32 Ohio St.3d 56; State v. Davis,supra. Accordingly, appellant's eleventh assignment of error is found not well-taken.
The argument presented in appellant's twelfth assignment of error has recently been considered and rejected by the Ohio Supreme Court in State v. Baston (1999), 85 Ohio St.3d 418, 429. Appellant's twelfth assignment of error is found not well-taken.
The arguments presented in appellant's thirteenth and fourteenth assignments of error were likewise considered and rejected by the Ohio Supreme Court in State v. Bey, supra at 502-503. Appellant's thirteenth and fourteenth assignments of error are found not well-taken.
In his fifteenth assignment of error, appellant contends that the panel erred in concluding that the aggravating circumstances in this case (that the murder was committed in the course of an aggravated robbery and an aggravated burglary) outweighed the mitigating factor of his limited intellectual abilities.
As discussed above, the assessment and weight to be given mitigating evidence are matters for the trial court's determination. State v. Steffen, supra, see also State v. Fox
(1994), 69 Ohio St.3d 183, 191. Moreover, if any errors were committed by the panel in weighing the mitigating factors they will be harmless errors as this court must conduct a statutorily mandated independent reweighing of the evidence. R.C. 2929.05;State v. Lott (1990), 51 Ohio St.3d 160, 170. Appellant's fifteenth assignment of error is found not well-taken.
In his sixteenth assignment of error, appellant contends that his death sentence is neither appropriate nor in proportion to death sentences in other cases. Appellant's assignment of error is found not well-taken for reasons that will be discussed below.
Pursuant to R.C. 2929.05(A), we must conduct an independent review of the record and determine whether the evidence supports the aggravating circumstances appellant was found guilty of committing, whether those aggravating circumstances outweigh the mitigating factors in this case beyond a reasonable doubt, and whether the sentence of death imposed on appellant is excessive or disproportionate to the penalty imposed in similar cases.
 I.
Appellant was charged with the following two aggravating circumstances: (1) the murder was committed while appellant was committing aggravated burglary and (2) the murder was committed while appellant was committing aggravated robbery.
Evidence at the crime scene, specifically broken glass inside of the basement, showed that a basement window had been broken from the outside. The basement door appeared to have been forced open as pieces of the lock were on the floor and the door was partially unhinged. The contents of the victims purse had been emptied and her television set was missing. The victim sustained a severe beating.
Appellant lived in the victim's neighborhood and often performed odd jobs for her in exchange for money. He was aware that she was living alone, elderly and hard of hearing. According to the victim's family members, appellant had recently been asking the victim for money.
In the early morning hours of November 23, appellant, with blood on the lower half of his pants, attempted to sell the victim's television set. Hours before the crime, appellant was in possession of the hat that was found at the crime scene. Police matched a bloody shoe print on one of the victim's pillow cases to one of the shoes appellant was wearing when he was arrested. A Toledo Police Criminalist testified that based on scientific tests, there was a "strong probability" that a glass fragment lodged in the sole of his shoe came from the victim's broken basement window.
We conclude that there were sufficient facts and other evidence in this case for the panel to conclude beyond a reasonable doubt that appellant committed the aggravating circumstances of aggravated burglary and aggravated robbery.
 II.
We must now weigh the mitigating factors against the aggravating circumstances. In addition to the nature and circumstances of the offense, the history, character and the background of appellant, this court must consider:
 "(1) Whether the victim of the offense induced or facilitated it;
 (2) Whether it is unlikely that the offense would have been committed, but for the fact that the offender was under duress, coercion, or strong provocation;
 (3) Whether, at the time of committing the offense, the offender, because of a mental disease or defect, lacked substantial capacity to appreciate the criminality of the offender's conduct or to conform the offender's conduct to the requirements of the law;
(4) The youth of the offender;
 (5) The offender's lack of a significant history of prior criminal convictions and delinquency adjudications;
 (6) If the offender was a participant in the offense but not the principal offender, the degree of the offender's participation in the offense and the degree of the offender's participation in the acts that led to the death of the victim;
 (7) Any other factors that are relevant to the issue of whether the offender should be sentenced to death." R.C. 2929.04(B).
The record shows that appellant was one of nine children born to a rural, impoverished family in Tennessee. He dropped out of school in the seventh grade. His father was purportedly an alcoholic. One of appellant's brothers was killed by his father in self-defense. Another brother spent some time in a mental health institution. Appellant has a long history of drug and alcohol abuse.
Regarding the factors enumerated in R.C. 2929.04(B), there is no evidence that the victim in any way induced or facilitated the offense. Nor was there evidence that appellant was under duress, coercion or provocation as described in R.C. 2929.04(B)(2). Two clinical psychologists, Dr. Jeffrey Smalldon and Dr. Janice Ort, testified that appellant was capable of distinguishing right from wrong. Dr. Smalldon specifically testified that appellant was capable of distinguishing right from wrong at the time of the offense. In that appellant was thirty-nine years of age at the time of the offense, his youth was not a mitigating factor. Before the offense, appellant had a lengthy criminal record which included convictions for breaking and entering, receiving stolen property and gross sexual imposition. R.C. 2929.04(B)(6) does not apply in this instance because there is no evidence suggesting that appellant was anything but the sole offender.
There are "other factors" pursuant to R.C. 2929.04(B)(7) that we believe are entitled to some weight. Appellant's IQ score was in the low 70's. According to Dr. Smalldon, the test results indicate that appellant "has very significant intellectual deficits * * * that place him in the cusp of the mildly retarded and low borderline ranges of intellectual functioning." In 1981, appellant was hit in the head with a baseball bat. Afterwards he reported memory losses. Appellant often believed that the devil was talking to him. In a 1993 report completed for purposes of determining appellant's eligibility for social security benefits, a neuropsychologist concluded that appellant was "probably" functioning in the high range of mental retardation possibly a result from his 1981 head injury. Dr. Ort, however, testified that no firm diagnosis of mild, mental retardation was ever made. In 1982, following a prison stay, appellant was placed in a halfway house. He enjoyed some success in the program as far as abstaining from alcohol and completing a job training program. Dr. Ort testified that appellant had trouble maintaining his success once he left the structured environment. Dr. Ort agreed that despite appellant's mental deficiencies, he was capable of functioning in the community.
We have thoroughly reviewed the evidence and testimony offered in mitigation. Viewing the evidence in its entirety, we must conclude that the aggravating circumstances appellant was found guilty of committing outweigh the mitigating factors in this case.
 III.
Finally, we must determine whether or not the death sentence imposed in this case is excessive or disproportional to the penalty imposed in similar cases. This review should be limited to cases already decided by the reviewing court in which the death penalty has been imposed. State v. Steffen, supra.
In State v. Smith (Feb. 6, 1998), Lucas App. No. L-94-093, unreported, the defendant was convicted of committing murder during the course of an aggravated robbery. In mitigation, the defendant offered evidence of his difficult childhood and alleged that he suffered from a mental defect which prevented him from conforming his conduct to the dictates of the law. We affirmed the death penalty.
In State v. Baston, (Sept. 12, 1997), Lucas App No. L-95-087, unreported, the defendant was convicted of committing murder during the course of an aggravated robbery. In mitigation, the defendant cited to the fact that he was only twenty years old when he committed the crime. He also offered evidence of an abusive childhood. We affirmed the death penalty. In State v. Fox (Aug. 7, 1992), Wood App. No. 90WD067, unreported, the defendant was convicted of murder in the course of committing an aggravated kidnaping. The defendant offered evidence in mitigation that he suffered from a severe, personality disorder. Intelligence tests showed the defendant to be of low, average intelligence. We affirmed the death penalty.
In State v. Montgomery (Aug. 12, 1988), Lucas App. No. L-86-395, unreported, the defendant was convicted of committing murder involving the purposeful killing of two or more people and in the course of committing aggravated robbery. Appellant introduced mitigation evidence that he was mentally ill but legally sane. We affirmed the death penalty.
In State v. Rogers (March 10, 1984), Lucas App. No. L-82-344, unreported, the defendant was found guilty of committing aggravated murder in the course of committing a kidnaping. Though the mitigation evidence showed the defendant to be mildly, mentally retarded with a history of alcoholism, we affirmed the death penalty.
Based on the foregoing, we do not find that the imposition of the death penalty in this case is excessive or disproportional to other cases in our court wherein we have affirmed a death sentence.
In conclusion, we find that the evidence presented sustained the finding of aggravating circumstances in this case, that the aggravating circumstances outweighed the mitigating factors beyond a reasonable doubt, that the sentence of death imposed upon appellant was appropriate in this case, and that the sentencing court properly so determined.
On consideration whereof, this court finds that appellant was not prejudiced or prevented from having a fair trial, and the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant has an automatic appeal to the Ohio Supreme Court pursuant to R.C. 2929.05. For that reason we order the clerk of this court to file a copy of this opinion with the clerk of the Ohio Supreme Court within fifteen days of the issuance of this opinion in accordance with R.C. 2929.05(A). We further order a continuance of the stay of execution of sentence previously granted by the Lucas County Court of Common Pleas on January 2, 1996, pending appeal to the Ohio Supreme Court. Costs to abide final determination by the Supreme Court of Ohio.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Melvin L. Resnick, J.______ _______________________________ JUDGE
Richard W. Knepper, J._____ _______________________________ JUDGE
Mark L. Pietrykowski, J.___ _______________________________ JUDGE CONCUR.