THE STATE OF OHIO, APPELLEE, *v.* DAVIS, APPELLANT.

[Cite as *State v. Davis* (1992), 63 Ohio St.3d 44.]

(No. 90–2524—Submitted December 11, 1991—Decided February 19, 1992.)

*John F. Holcomb*, Prosecuting Attorney, and *Daniel G. Eichel*, for appellee.

*Randall M. Dana*, Ohio Public Defender, *Joann Bour–Stokes* and *Linda Prucha*, for appellant.

DOUGLAS, J. This appeal involves questions relating to the resentencing of appellant pursuant to our remand in *Davis, supra*. Appellant presents a number of issues for our consideration. We have considered appellant's propositions of law and have reviewed the death sentence for appropriateness and proportionality. Upon review, and for the reasons which follow, we affirm the sentence of death.

## I

In his first proposition of law, appellant argues that his sentence must be vacated since he was not permitted to introduce additional (post-trial) mitigating evidence at the resentencing hearing, and since the three-judge panel, in resentencing appellant, limited its consideration to the evidence presented in mitigation at appellant's 1984 trial. In support of this argument, appellant relies upon a litany of United States Supreme Court cases requiring that relevant mitigating evidence not be precluded from consideration by the "sentencer" in a capital case. See, *e.g.*, *Lockett v. Ohio* (1978), 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973; *Eddings v. Oklahoma* (1982), 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1; *Skipper v. South Carolina* (1986), 476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed.2d 1; and *Hitchcock v. Dugger* (1987), 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347.

In response, appellee argues that upon remand from an appellate court, a lower court is required to proceed from the point at which the error occurred. See, *e.g.*, *State, ex rel. Stevenson, v. Murray* (1982), 69 Ohio St.2d 112, 113, 23 O.O.3d 160, 431 N.E.2d 324, 325. In the case at bar, the *Davis* majority held that errors occurred *after* the close of evidence in the mitigation phase of appellant's 1984 trial. *Id.*, 38 Ohio St.3d at 367–373, 528 N.E.2d at 931–936. Therefore, appellee argues that the panel did not err in failing to consider the additional mitigating evidence at the resentencing hearing.

We find that the cases cited by appellant are distinguishable from the facts in the case at bar. For instance, appellant places great emphasis on *Skipper, supra.* In *Skipper,* Ronald Skipper was convicted in South Carolina for capital murder and rape. During the penalty phase of his trial, Skipper sought to introduce the testimony of witnesses concerning Skipper's adjustment to prison life during the seven and one-half months Skipper spent in jail between his arrest for the murder and rape and his trial on those charges. The trial court excluded the evidence as irrelevant. After hearing closing arguments (during the course of which the prosecutor argued that Skipper would pose disciplinary problems if sentenced to prison and would likely rape other prisoners), the jury sentenced Skipper to death. The United States Supreme Court vacated Skipper's death sentence, finding that the evidence of Skipper's good prison record *between his arrest and trial* was relevant mitigating evidence which should not have been excluded from consideration by the trial jury. *Id.* at 4–5, 106 S.Ct. at 1671, 90 L.Ed.2d at 6–7.

In the case at bar, no relevant mitigating evidence was excluded from consideration by the panel during the mitigation phase of appellant's 1984 trial. All mitigating evidence which was available at that time was duly received and considered by the panel including evidence concerning appellant's ability to adjust to prison life. That same relevant evidence was again received and considered by the panel in 1989 for purposes of resentencing appellant. The evidence excluded from consideration by the panel at appellant's resentencing hearing concerned certain *post-trial* matters. Under these circumstances, we do not believe that *Skipper* or, for that matter, *Lockett, supra, Eddings, supra,* or *Hitchcock, supra,* requires that appellant's death sentence be vacated. Here, appellant was not denied the type of individual consideration of relevant mitigating factors required in capital cases. Accordingly, we reject appellant's first proposition of law.[2]

## II

The three-judge panel began its resentencing deliberations on Friday, August 4, 1989. The members of the panel then separated over the weekend to

2. Our holding herein may have been different had appellant sought to introduce additional mitigating evidence at the resentencing hearing which he could have presented during the mitigation phase of his 1984 trial. However, at the resentencing hearing, the additional evidence appellant sought to introduce concerned his post-trial accomplishments. If, as appellant suggests, post-trial mitigating evidence must be considered in this case, the logical extension of that rule would require us to consider post-trial mitigating evidence in every capital case which we review. In this regard, the law of Ohio expressly prohibits a reviewing court from adding matters to the record on appeal. See *State v. Ishmail* (1978), 54 Ohio St.2d 402, 8 O.O.3d 405, 377 N.E.2d 500, paragraphs one and two of the syllabus. See, also, App.R. 9.

individually consider the case. On Monday, August 7, 1989, the panel resumed deliberations and, later that day, announced its decision sentencing appellant to death. In his fourth proposition of law, appellant claims that the members of the panel erred in separating during sentencing deliberations. We disagree.

R.C. 2945.06 provides, in part, that:

"In any case in which a defendant waives his right to trial by jury and elects to be tried by the court under section 2945.05 of the Revised Code, any judge of the court in which the cause is pending shall proceed to hear, try, and determine the cause in accordance with the rules and in like manner as if the cause were being tried before a jury. * * * "

R.C. 2945.33 [3] and Crim.R. 24(G)(2)(c) [4] require that jurors in a capital case remain sequestered during sentencing deliberations. Furthermore, R.C.

---

3. R.C. 2945.33 provides, in part:

"When a cause is finally submitted the jurors must be kept together in a convenient place under the charge of an officer until they agree upon a verdict, or are discharged by the court. The court, except in cases where the offense charged may be punishable by death, may permit the jurors to separate during the adjournment of court overnight, under proper cautions, or under supervision of an officer. Such officer shall not permit a communication to be made to them, nor make any himself except to ask if they have agreed upon a verdict, unless he does so by order of the court. Such officer shall not communicate to any person, before the verdict is delivered, any matter in relation to their deliberation. * * *

"In cases where the offense charged may be punished by death, after the case is finally submitted to the jury, the jurors shall be kept in charge of the proper officer and proper arrangements for their care and maintenance shall be made as under section 2945.31 of the Revised Code."

4. Crim.R. 24(G) provides, in part:

"Control of juries

" * * *

"(2) *After submission of case to jury.*

" * * *

"(c) *Capital cases.* After submission of a capital case to the jury, the jury shall remain under the supervision of an officer of the court until a verdict is rendered or the jury is discharged by the court.

"(3) *Separation in emergency.* Where the jury is sequestered or after a capital case is submitted to the jury, the court may, in an emergency and upon giving cautionary instructions, allow temporary separation of jurors.

"(4) *Duties of supervising officer.* Where jurors are required to remain under the supervision of an officer of the court, the court shall make arrangements for their care, maintenance and comfort.

"When the jury is in the care of an officer of the court and until the jury is discharged by the court, the officer may inquire whether the jury has reached a verdict, but shall not:

"(a) Communicate any matter concerning jury conduct to anyone except the judge or;

"(b) Communicate with the jurors or permit communications with jurors, except as allowed by court order."

2945.33 and Crim.R. 24(G) clearly contemplate that jurors in capital cases generally must not be permitted to separate during their sentencing deliberations.

The purpose of R.C. 2945.33 and Crim.R. 24(G) is evident. The statute and rule are designed to protect jurors from the dangers of jury tampering and other outside influences and to, thereby, protect the integrity of the jury's verdict (or recommendation). As such, it is apparent that the rules pertaining to jury sequestration need not apply to a three-judge panel which is presumed to consider only relevant, competent and admissible evidence in its deliberations. See, *e.g.*, *State v. Wickline* (1990), 50 Ohio St.3d 114, 122, 552 N.E.2d 913, 922, and *State v. White* (1968), 15 Ohio St.2d 146, 151, 44 O.O.2d 132, 136, 239 N.E.2d 65, 70. Judges, unlike juries, are presumed to know the law. Judges are trained and expected to disregard any extraneous influences in deliberations. Therefore, notwithstanding the provisions R.C. 2945.06, the panel did not err in failing to follow the rules pertaining to jury sequestration.

Appellant argues that he was " * * * denied the benefit of the decision of a deliberative body * * * " as a result of the members of the panel having individually considered the evidence during their separation. While we agree with appellant that he was entitled to a decision of a "deliberative body," the record in this case shows that the panel did engage in direct deliberations. As no evidence before us supports appellant's argument that he was denied any right to which he was entitled, we reject appellant's fourth proposition of law.

### III

In his fifth proposition of law, appellant challenges the constitutionality of our holding in *Davis, supra,* which permitted the three-judge panel to consider reimposing the death penalty on remand. Appellant argues that our holding in *Davis* is unconstitutional since a defendant whose death sentence is vacated following a jury trial would not similarly be subject to the death penalty upon sentencing remand. See *State v. Penix* (1987), 32 Ohio St.3d 369, 513 N.E.2d 744, syllabus. In effect, appellant requests that we reconsider our holding in *Davis* in which we distinguished *Penix, supra.* See *Davis, supra,* 38 Ohio St.3d at 373, 528 N.E.2d at 936. However, we decline appellant's invitation, at this time, to revisit our basic holding in *Davis.*

Appellant also argues that he must now be permitted to withdraw his 1984 waiver of the right to trial by jury based upon our holding in *Davis* which permitted the panel to resentence appellant to death. In this regard, appellant suggests that he did not make an "informed choice" between being tried by a panel or by a jury because he was not aware at the time he signed the waiver that his choice between panel or jury could ultimately affect his eligibility to

be resentenced to death. However, appellant cannot properly rely on our 1987 decision in *Penix, supra,* and our 1988 decision in *Davis* to support the contention that he did not knowingly and intelligently elect to be tried by a three-judge panel in 1984. As nothing in the record suggests that appellant was misinformed regarding the distinctions between trial by panel or trial by jury at the time appellant signed the 1984 waiver, appellant's "informed choice" argument lacks merit.

Accordingly, appellant's fifth proposition of law is not well taken.

## IV

In his second proposition of law, appellant argues that the court of appeals failed to adequately comply with the requirements of R.C. 2929.05(A) in reviewing the appropriateness of appellant's death sentence. In addressing the appropriateness of appellant's sentence, the court of appeals stated that:

"R.C. 2929.05(A) also requires that this court independently weigh all of the facts and other evidence disclosed in the record, consider the offense and the offender, and determine whether the aggravating circumstance appellant was found guilty of committing outweighs the mitigating factors in the case.

"In our prior decision in this case, we found that the aggravating circumstance under R.C. 2929.04(A)(5) (prior murder conviction) was sufficiently established by the evidence and that it outweighed the mitigating factors presented by appellant beyond a reasonable doubt. See *Davis* [ (1986) ], Butler App. No. CA84–06–071, unreported, at 27–28 [1986 WL 5989]. As appellant has presented no argument which convinces us otherwise, our conclusion remains the same. Therefore, we find that the statutory aggravating circumstance appellant was found guilty of committing outweighs the mitigating factors in the case."

In our judgment, the court of appeals satisfied the requirements of R.C. 2929.05(A). In its 1986 decision, the court of appeals adequately reviewed the appropriateness of appellant's original death sentence. In the case now before us, the court of appeals merely adopted its previous analysis and assessment of the evidence, finding no persuasive reason to change its view that the penalty of death is appropriate. Accordingly, we reject appellant's second proposition of law.

## V

In his sixth proposition of law, appellant claims that the process of proportionality review in Ohio is "fatally flawed" because, according to appellant, the trial courts in this state have repeatedly failed to file written sentencing

opinions in capital cases when the jury has recommended life imprisonment. However, in *State v. Steffen* (1987), 31 Ohio St.3d 111, 31 OBR 273, 509 N.E.2d 383, paragraph one of the syllabus, we held that:

"The proportionality review required by R.C. 2929.05(A) is satisfied by a review of those cases already decided by the reviewing court in which the death penalty has been imposed."

Therefore, the proportionality review mandated by R.C. 2929.05(A) does not require a review of those cases in which a sentence of life imprisonment is imposed. Accordingly, appellant has failed to show that he has been prejudiced by the "process of proportionality review" in Ohio.

As we continue to believe that the proportionality review conducted by appellate courts in this state is the best available approach to ensure fair sentencing determinations, we reject appellant's sixth proposition of law.

## VI

In his seventh proposition of law, appellant raises several arguments challenging the constitutionality of Ohio's death penalty scheme. In a long line of cases, we have held that the Ohio death penalty statute is constitutional. See, *e.g., State v. Jenkins* (1984), 15 Ohio St.3d 164, 15 OBR 311, 473 N.E.2d 264; *State v. Maurer* (1984), 15 Ohio St.3d 239, 15 OBR 379, 473 N.E.2d 768; *State v. Buell* (1986), 22 Ohio St.3d 124, 22 OBR 203, 489 N.E.2d 795; *State v. Zuern* (1987), 32 Ohio St.3d 56, 512 N.E.2d 585. See, also, *Davis, supra,* 38 Ohio St.3d at 366–367, 528 N.E.2d at 931.

As appellant presents no compelling argument why we should now find Ohio's death penalty statute to be unconstitutional, we reject appellant's seventh proposition of law.

## VII

Finally, we must independently review the death sentence for appropriateness (also raised by appellant in his third proposition of law) and proportionality. The aggravating specification in this case is that, prior to killing Butler, appellant had been convicted on one count of second-degree murder in violation of former R.C. 2901.05 for purposely causing the death of his wife. See R.C. 2929.04(A)(5). We find that the aggravating specification was proved beyond a reasonable doubt.

In mitigation, appellant presented evidence concerning his academic accomplishments in prison while he was incarcerated for the murder of his wife. Specifically, during this period of incarceration, appellant attended the general education and development program for high school graduation and was

awarded a high school "GED"; appellant worked for and obtained an Associate's Degree in Business Administration; appellant was awarded a certificate for vocational training; and appellant received on-the-job training as a dental technician. Appellant had no significant disciplinary problems during this period of incarceration and, following his release from prison, appellant attended night classes at Urbana College, found a job, and was able to support himself. Additionally, appellant presented evidence that he has maintained a good relationship with the members of his family and that he has received an honorable discharge from the U.S. Navy. We conclude that the foregoing factors concerning appellant's nature and character are entitled to some, but very little, weight in mitigation.

Appellant also introduced evidence on the mitigating factor that he lacked a substantial capacity to conform his conduct to the requirements of the law because of a mental disease or defect. We find that appellant did not establish the existence of this factor by a preponderance of the evidence. However, we do believe that appellant's personality disorder as testified to by Dr. Fisher (in the penalty phase of appellant's 1984 trial) is entitled to some weight in mitigation.

We have also considered the probability that appellant would never be released from prison if he were to be sentenced to life imprisonment. This factor is entitled to some weight in mitigation as appellant has demonstrated (during his prior incarceration for causing the death of his wife) his ability to successfully adapt to prison life.

Weighing the various mitigating factors against the aggravating circumstance, we conclude that the aggravating circumstance outweighs the mitigating factors beyond a reasonable doubt.

As our final task, we have undertaken a comparison of the sentence in this case to those in which we have previously imposed the death penalty. We find appellant's death sentence to be appropriate in this case, as it is neither excessive nor disproportionate. See, *e.g.*, *State v. Mapes* (1985), 19 Ohio St.3d 108, 19 OBR 318, 484 N.E.2d 140.

Accordingly, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., SWEENEY, HOLMES, H. BROWN and RESNICK, JJ., concur.

WRIGHT, J., dissents.

WRIGHT, J., dissenting. I must respectfully dissent.

## I

The trial court, in resentencing appellant, restricted its consideration of mitigating evidence to that offered by the appellant at his 1984 trial. Although it did permit appellant's counsel to proffer what the testimony of its witnesses would be, there is no indication that the trial court placed any weight upon the proffered evidence.

In our decision remanding appellant to the trial court for a resentencing "trial," *State v. Davis* (1988), 38 Ohio St.3d 361, 372, 528 N.E.2d 925, 936, I believe we intended the trial court to sentence the appellant after a full hearing, including the reintroduction of mitigating evidence from the first sentencing as well as any post-trial mitigating evidence. In reviewing the cases cited by appellant and rejected by the majority, I would hold that appellant was denied "the type of individual consideration of relevant mitigating factors required in capital cases."

As indicated by the United States Supreme Court, courts are required to consider any evidence in mitigation that a defendant is able to present at the time of his sentencing. As the court noted in *Lockett v. Ohio* (1978), 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973, the Constitution requires "[t]hat the sentencer, in all but the rarest kind of capital case, not be precluded from considering, *as a mitigating factor*, any aspect of a defendant's character or record * * * that the defendant proffers as a basis for a sentence less than death." (Emphasis *sic;* footnotes omitted.) *Id.* at 604, 98 S.Ct. at 2964–2965, 57 L.Ed.2d at 990. A sentencer "may not refuse to consider or ' "be precluded from considering" ' any relevant mitigating evidence." *Hitchcock v. Dugger* (1987), 481 U.S. 393, 394, 107 S.Ct. 1821, 1822, 95 L.Ed.2d 347, 350. These directives are just as important in resentencing as they are in the original sentencing, and are consistent with the directive in R.C. 2929.04(C) that a defendant "be given great latitude" in presenting evidence of mitigating factors. Because I believe that our system for imposing the death penalty permits the defendant to present any relevant evidence in mitigation when his life is on the line, I would vacate the sentence of death and remand the case to the trial court for a new resentencing hearing.

## II

I am also troubled by the court of appeals' treatment of its duty to independently review the sentence pursuant to R.C. 2929.05. The review it engaged in can be described as cursory at best. The independent weighing required by the statute consisted of merely a reaffirmation of the appellate court's original determination that the sentence of death was proper, because in its view, appellant "presented no argument" to convince the court to the

contrary. Implicit within the court of appeals' opinion in its review of the sentence was a belief that its prior determination was entitled to a presumption of validity that needed to be overcome by appellant's argument. Clearly it was improper for the court to rely upon its prior determination, which we vacated, to forgo its statutory duty to independently review the sentence of death.

It has been suggested that any error resulting from the failure of the court of appeals to perform its reviewing function can be cured by our own independent review of the sentence. I am troubled, however, by our continual reliance upon this court's independent review as a means to remedy errors below. The case at bar is an excellent example of how the system of checks envisioned by the General Assembly to ensure the proper application of the death penalty has so failed that our own independent review cannot possibly restore the system to its intended function.

In this case, the system failed first at the trial level, where the defendant was precluded from introducing mitigating evidence, and then at the appellate level, where the court failed to independently review the death sentence. If our multi-tiered system of review is to function to prevent the arbitrary imposition of the death penalty, *State v. Gillard* (1988), 40 Ohio St.3d 226, 235, 533 N.E.2d 272, 282, it is imperative that each court involved in the case fully assume its statutory responsibilities to the letter of the law. Anything less than a full commitment will result in a system that is constitutionally infirm and lacking in respect.

Appellant is entitled to have the trial court consider his evidence in mitigation and to have the court of appeals review that evidence in its independent review. Accord *State v. Maurer* (1984), 15 Ohio St.3d 239, 15 OBR 379, 473 N.E.2d 768, paragraph four of the syllabus. For all the reasons set forth above, I would reverse the appellate court and remand the appellant to the trial court for resentencing.