JOURNAL ENTRY AND OPINION
{¶ 1} Defendant Jerry Warren appeals his conviction for gross sexual imposition and the trial court's determination that he is a sexual predator. For the reasons set forth below, we affirm.
 {¶ 2} On March 19, 2003, defendant was indicted for one count of kidnapping "Jane Doe, DOB: November 7, 1974, a mental incompetent[.]" This charge contained a sexual motivation specification. Defendant was also indicted for three counts of gross sexual imposition in connection with alleged sexual contact with the same woman. Defendant pled not guilty and the matter proceeded to a bench trial on September 24, 2003.
 {¶ 3} For its case, the state presented the testimony of Doe,[1] Cleveland Police Officer John Healy, Cuyahoga County Board of Mental Retardation ("CCBMR") Investigator Jerome Taylor, CCBMR job trainer Norva Ezell, Doe's mother, Jessica Tate-James, and Cleveland Police Sex Crimes Detective Alan Strickler.
 {¶ 4} Jane Doe testified that defendant is her cousin. One day while her mother was working, defendant came to her house and they watched music videos. Defendant unzipped his pants and told her to bounce on his lap. Doe further testified that defendant unfastened her bra, kissed her breasts, pulled her pants down and kissed her vagina. She bounced on his lap then told him to stop and asked him to leave.
 {¶ 5} On cross-examination, Doe admitted that she has had problems with a co-worker named Walter but she denied that she had confused this matter with the matter involving Walter.
 {¶ 6} Officer Healy testified that in February 2003, he responded to a call concerning Doe. He spoke with Doe's mother and observed that Doe was mentally handicapped.
 {¶ 7} Investigator Taylor testified that he and Det. Strickler interviewed Doe at her home. According to Taylor, Doe described sexual contact but seemed calm.
 {¶ 8} Norva Ezell testified that Doe works as a book packager. In December 2002, and in January 2003, Doe experienced seizures while at work. According to Ezell, mentally retarded people can experience seizures due to stress, anger, or medication. He further testified that Doe is not on medication, and that she had never previously had seizures.
 {¶ 9} Tate-James testified that her daughter Doe is twenty-eight years old and has Down syndrome. Doe, and another daughter who is twenty-four and physically disabled reside with her. Doe has the understanding of a five-year-old in many matters, is advanced in other matters, is not good at recording times and dates, but is able to relate factual events.
 {¶ 10} Tate-James further testified that defendant is her nephew and that he has gone to her home while she is at work. During one such visit, defendant telephoned her to report that Doe had lifted her shirt for him and claimed to be pregnant. The call was not particularly disturbing to Tate-James because Doe has made similar comments in the past.
 {¶ 11} In December 2002, Tate-James became concerned about the behavior of one of Doe's co-workers and asked Doe if the co-worker had ever improperly touched her. Doe began to cry and stated that he had not, but, according to Tate-James, Doe stated that defendant had "touched her breast and private area and in the back, her buttocks." (Tr. 52). Tate-James allowed Doe to rest then asked her about the matter later in the evening. At this time, Doe provided additional details about the incident. Tate-James telephoned defendant to question him about the incident. He reportedly denied having sexual intercourse with Doe "but said that he touched her breasts and he did those things." (Tr. 56). According to Tate-James, defendant admitted that he had made a mistake but claimed that it had only happened once. (Tr. 57).
 {¶ 12} On cross-examination, Tate-James admitted that Doe has lied to her, and that Doe was molested by her stepfather who is now in prison. Tate-James denied that she had previously stated that defendant "is not responsible for the charges" (Tr. 66) but she admitted that she was concerned about whether Doe was accurately relating what had happened and was not confusing the incident with any previous incident. She also admitted that she had sent a letter to defendant in which she wrote, in relevant part:
 {¶ 13} "* * * I do want you to know and understand that I saw or see no reason to press charges against you. In fact, I told Miss Chamber * * * in charge of sex crimes what my daughter told me was not sexual crimes. She told me that you all was downstairs looking at TV and you said, come on, [Doe], let's dance. And you both sit down on the couch and she sits on your lap.
 {¶ 14} "So Miss Chamber wanted to know why I had not called in on you since [Doe] is someone handicapped and I am her guardian. She mentioned to me that [Doe] could be removed from my home because it appeared that I was not properly protecting her. And I filed a police report on you. * * * I asked her * * * did you have oral sex, or put your penis on her vagina or did you touch her breast. I questioned her about this for four days, and she would say no, Jerry didn't do that. * * * She began to change her story * * * that's when I finally called you and told you what [Doe] had told me. So after talking to you and you confirm the originaly [sic] story [Doe] had told me, I was upset at the thought of you or imigining [sic] you doing anything like that to her, but what she told me was vage [sic] inconclusive * * *."
 {¶ 15} On redirect examination, Tate-James explained that defendant had admitted to her that he had sexual contact with Doe, and also confessed the incident to their church elders so she did not believe it was necessary to prosecute him.
 {¶ 16} Det. Alan Strickler testified that he interviewed Doe, her mother, and sister at the police station and Doe indicated that defendant had inappropriately touched her. Det. Strickler and Det. King interviewed Doe again at her home. Tate-James appeared very reluctant to press charges.
 {¶ 17} Following the presentation of the state's case, defendant moved for acquittal of the charges. The trial court granted the motion as to the kidnapping charge and two of the counts of gross sexual imposition.
 {¶ 18} Defendant elected to present evidence and testified that he was previously convicted of attempted rape and gross sexual imposition and is currently on parole. He stated that he does handiwork for his aunt, Tate-James. Defendant admitted that he went Doe's house while Tate-James was at work and the twenty-four-year-old's physical therapist let him in. He had something to eat, then went to the basement to watch music videos. Doe came downstairs and began to dance. Doe told him that Walter had gotten her pregnant. She exposed her abdomen and told him that the baby was moving. Defendant touched her abdomen, then called Tate-James at work. Tate-James said that Doe tells everyone that she is pregnant but stated that she would discuss the matter with Doe when she got home. Defendant became uncomfortable and left. He denied engaging in sexual contact with Doe at that time or at any other time.
 {¶ 19} On cross-examination, defendant admitted that if Doe had answered the door, she would not have let him into the house. He also admitted that he had been a Cleveland Police Officer but resigned after failing a drug test.
 {¶ 20} Defendant's mother testified that defendant called her after Doe reported that she was pregnant.
 {¶ 21} The trial court convicted defendant of the remaining count of gross sexual imposition and announced that it would conduct the sexual offender classification hearing at the time of sentencing. (Tr. 171). At these proceedings, the state established that defendant had been convicted of attempted rape and gross sexual imposition in connection with the abuse of his sister which began when she was seven years old. He was on parole at the time of the hearing. Defendant's trial counsel presented the court with documents that demonstrated that defendant successfully completed sixteen self-help or training programs during his previous incarceration, that he completed four years of service in the Army and was honorably discharged, and that he graduated from high school. The court determined that imprisonment is consistent with the purposes of R.C. 2929.11, sentenced defendant to one year incarceration, and further determined that defendant is a sexual predator. Defendant now appeals and assigns five errors for our review.
 {¶ 22} Defendant's first assignment of error states:
 {¶ 23} "The defendant was denied his constitutional right to effective assistance of counsel when his attorney failed to protect his rights both at trial and at the sexual offender classification hearing."
 {¶ 24} Within this assignment of error, defendant complains that his trial counsel failed to respond to the state's request for discovery thereby resulting in exclusion of a defense witness at trial, failed to proffer the testimony of the excluded witness, was unprepared for the sexual offender classification hearing and failed to request an expert evaluation on the issue of recidivism. In order to establish a claim of ineffective assistance of counsel, a criminal defendant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense. Strickland v. Washington
(1984), 466 U.S. 668, 687, 80 L.Ed.2d 674, 104 S.Ct. 2052; Statev. Noling, 98 Ohio St.3d 44, 65, 2002-Ohio-7044, 781 N.E.2d 88.
 {¶ 25} The court must evaluate "the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland,466 U.S. at 690, 80 L. Ed.2d at 695. The defendant has the burden of proof and must overcome the strong presumption that counsel's performance was adequate. Strickland, 466 U.S. at 689,80 L.Ed.2d at 694-695. In Ohio, a properly licensed attorney is presumed competent. Vaughn v. Maxwell (1965), 2 Ohio St.2d 299,301, 209 N.E.2d 164.
A. Failing to Respond to State's Request for Discovery
 {¶ 26} Turning to the issue of whether defense counsel's performance was deficient for failing to respond to the state's request for discovery, we note that in State v. Valentine (Feb. 28, 1980), Cuyahoga App. No. 40677, this court stated:
 {¶ 27} "Responding to a request for discovery is not an absolute duty imposed on a criminal defendant's trial counsel. The duty arises only when the circumstances of the case compel prudent counsel to respond accordingly in order to protect his client's rights."
 {¶ 28} Turning to the issue of prejudice we note that, following defense counsel's failure to respond to the request for discovery, the court excluded a defense witness from testifying. The defense then proceeded with the testimony of defendant and defendant's mother, and did not call defendant's brother to testify. Counsel's choice compels the conclusion that the mother's testimony was more salient than the brother's. Defendant's mother's testimony was only marginally relevant, however. Moreover, only Doe and defendant were present at the time of the incident, and there was evidence that defendant admitted to Doe's mother that he had sexual contact with Doe. Defendant testified that he touched the woman's abdomen after she claimed to be pregnant. In accordance with the foregoing, we conclude that this case centered around the credibility of Doe and the defendant, and there is nothing in the record from which we may conclude that defendant's brother would have contributed significant testimony. We therefore conclude that defense counsel's failure to respond to the state's request for discovery, thereby resulting in the exclusion of a defense witness, did not deprive defendant of a fair trial, a trial whose result is reliable. Cf. State v. Reese (1982),8 Ohio App.3d 202,203,456 N.E.2d 1253
(failure to subpoena witnesses for a trial is not a substantial violation of defense counsel's essential duty to his client in the absence of any showing that the testimony of any one or more of the witnesses would have assisted the defense to the indictment).
 {¶ 29} Accordingly, this argument is without merit.
 {¶ 30} Failure to Proffer
 {¶ 31} With regard to whether defense counsel's failure to proffer the nature of the brother's testimony constituted deficient performance, we note that a failure to proffer does not constitute ineffective assistance of counsel per se. See Statev. Alvis (July 28, 1988), Athens App. No. 1380. Moreover, as noted previously, counsel adapted to the court's ruling by presenting testimony from the mother but this testimony was only marginally relevant. We therefore conclude that, as a matter of trial strategy, counsel may have declined to make a proffer which would have highlighted the weakness of the defense, and we will not criticize what appears to be a sound trial strategy. Statev. White (1998), 82 Ohio St.3d 16, 693 N.E.2d 772.
 {¶ 32} This portion of the assigned error is without merit.
 {¶ 33} Alleged Unpreparedness for Sexual Offender
A. Classification Hearing
 {¶ 34} Defendant next claims that his trial counsel was unprepared for the sexual offender classification hearing. We have thoroughly reviewed the record and we conclude that this claim is based upon a mis-characterization of an exchange which occurred when defendant's trial counsel complained about not being provided with discovery of the state's exhibits and insisted that the requirements of Crim.R. 16 were still in effect during the sexual predator proceedings. (Tr. 182). Moreover, the record reflects that defendant's trial counsel knew of the hearing, offered evidence that defendant had completed various programs while incarcerated, including one year of the Monticello Program for Sexual Offenders (tr. 173), and argued that defendant would not re-offend.
 {¶ 35} In accordance with the foregoing, this aspect of the assignment of error is completely without merit.
 {¶ 36} Failure to Provide Expert Testimony at Sexual
A. Predator Classification Hearing
 {¶ 37} The determination of whether an expert witness is needed during a sexual offender classification hearing is solely a matter of trial strategy. State v. Price, Franklin App. No. 00AP-1434, 2001-Ohio-8874, citing State v. Coleman (1989),45 Ohio St.3d 298, 307-308, 544 N.E.2d 622. A decision by defense counsel not to call an expert witness during such hearing generally will not sustain an ineffective assistance of counsel claim. State v. Price, supra.
 {¶ 38} Again, the record demonstrates that defendant's trial counsel introduced a certificate demonstrating that defendant had completed the Monticello program so some evidence concerning a lesser potential for recidivism was before the court. However, in light of defendant's prior guilty pleas to attempted rape and gross sexual imposition and the other evidence of record, we are unconvinced that, had counsel obtained an expert, there was reasonable probability of a different outcome. Accord State v.Price, supra; State v. Pigg, Champaign App. No. 2000 CA 25, 2002 Ohio 6198.
 {¶ 39} Accordingly, this contention lacks merit.
 {¶ 40} In accordance with all of the foregoing, the first assignment of error is without merit.
 {¶ 41} Defendant's second assignment of error states:
 {¶ 42} "The trial court erred in allowing a tremendous amount of hearsay to be admitted in violation of the defendant's rights to due process and to confront witnesses."
 {¶ 43} Defendant next complains that the trial court erred in permitting various witnesses to testify as to Doe's out-of-court statements.
 {¶ 44} As an initial matter, we note that hearsay is generally inadmissible because the declarant is not testifying in court and the factfinder is unable to observe the declarant and decide whether the declarant's statement is worthy of belief.State v. Hairston (Sep. 28, 2001), Franklin App. No. 01AP-252, citing Covington v. Sawyer (1983), 9 Ohio App. 3d 40, 43,458 N.E.2d 465. In this matter, the declarant testified at trial and was subject to full cross-examination so the general purpose of the hearsay rule was not undermined. State v. Hairston, supra, citing State v. Carter (1995), 72 Ohio St.3d 545, 558,651 N.E.2d 965. We further note that the challenged statements fall into two categories: (1)Doe's out-of-court statements to her mother; and (2) Doe's out-of-court statements during the police investigation.
 {¶ 45} With regard to the first category, we conclude that Doe's statements to her mother were admissible as excited utterances. Cf. State v. Ramsey, Cuyahoga App. No. 83026, 2004-Ohio-3618.
 {¶ 46} With regard to the second category, it is well-settled that statements offered by police officers to explain their conduct while investigating a crime are not hearsay because they are not offered for their truth, but rather, are offered as an explanation of the process of investigation. See State v. Price
(1992), 80 Ohio App.3d 108, 110, 608 N.E.2d 1088; State v.Braxton (1995), 102 Ohio App.3d 28, 49, 656 N.E.2d 970; Statev. Blevins (1987), 36 Ohio App.3d 147, 149, 521 N.E.2d 1105.
 {¶ 47} Finally, we note that in a bench trial, the trial court is presumed to have relied only upon admissible evidence.State v. Davis (1992), 63 Ohio St.3d 44, 584 N.E.2d 1192;State v. Post (1987), 32 Ohio St.3d 380, 384, 513 N.E.2d 754,759.
 {¶ 48} In accordance with the foregoing, we reject defendant's claim that he was prejudiced by the introduction of inadmissible hearsay. Defendant's third assignment of error states:
 {¶ 49} "The trial court erred in excluding a defense witness when allowing the witness to testify would not have caused any prejudice to the state."
 {¶ 50} Within this assignment of error, defendant complains that the trial court erred in ruling that, due to defendant's trial counsel's failure to respond to the state's request for discovery, one of the defense witnesses was barred from testifying.
 {¶ 51} The purpose of the discovery rules is to prevent surprise and the secreting of evidence favorable to one party.City of Lakewood v. Papadelis (1987), 32 Ohio St.3d 1,511 N.E.2d 1138. Crim.R. 16(E)(3) provides for the regulation of discovery and permits a trial court to exercise discretion in selecting the appropriate sanction for a discovery violation. SeeState v. Wiles (1991), 59 Ohio St.3d 71, 78, 571 N.E.2d 97,110; State v. Parson (1983), 6 Ohio St.3d 442, 445, 487,453 N.E.2d 689, 691; State v. Edwards (1976), 49 Ohio St.2d 31, 42,358 N.E.2d 1051, 1059. If a trial court finds that a party has not complied with reasonable discovery requests, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances. Crim.R. 16(E). The trial court must inquire as to the circumstances surrounding the violation and should impose the least severe sanction. City ofLakewood v. Papadelis, supra. The sanction of exclusion cannot be used against a criminal defendant if it would deprive him of the ability to present a defense. Id.
 {¶ 52} In this instance, it is undisputed that defendant's trial counsel failed to respond to the state's request for discovery and did not disclose its witnesses until after opening statements. Counsel's explanation for the omission was that he did not believe that the state had requested discovery from him (Tr. 13), but the record clearly demonstrated that the request was filed on June 12, 2003, and was duly served upon defendant's trial counsel. As the sanction, the trial court excluded one of defendant's witnesses but allowed defense counsel to determine which would be excluded. (Tr. 16). Thereafter, defense counsel presented the testimony of defendant and his mother. Under these circumstances, we find no abuse of discretion. The violation was undisputed, the information was disclosed at a point when a lesser sanction was impractical and the ruling did not deprive defendant of the ability to present a defense.
 {¶ 53} This assignment of error is without merit.
 {¶ 54} Defendant's fourth assignment of error states:
 {¶ 55} "The court's decision finding the defendant guilty of gross sexual imposition was against the manifest weight of the evidence."
 {¶ 56} Defendant next complains that there is insufficient evidence to support the conviction because Doe has a limited mental capacity and told numerous conflicting stories after questioning by various people. Defendant further notes that even Doe's mother was not convinced that a crime had occurred, but she feared that the woman would be removed from her home if she did not pursue criminal charges.
 {¶ 57} In considering whether a conviction is against the manifest weight of the evidence, the appellate court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [factfinder] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983),20 Ohio App.3d 172, 175, 485 N.E.2d 717; see, also, Tibbs v.Florida (1982), 457 U.S. 31, 102 S. Ct. 2211, 72 L.Ed.2d 652.
 {¶ 58} In this matter, it is undisputed that Doe has Down syndrome and has a limited mental capacity. The state also presented evidence that, while Doe and defendant were in the basement watching television, defendant unzipped his pants, told her to bounce on his lap, unfastened her bra, kissed her breasts, pulled her pants down and kissed her vagina. Doe's mother testified that she was extremely concerned about truthfully determining what had happened, and ascertaining that Doe had not confused this matter with a previous incident. She further testified that she questioned defendant about the incident and he admitted to improperly touching Doe but he denied engaging in sexual conduct. She explained that, because defendant confessed the incident to their church elders, she did not believe it was necessary to prosecute him. Defendant claimed that he simply touched the woman's abdomen but he did not present any evidence to rebut the admission to Tate-James. In accordance with the foregoing, we are unable to conclude that the factfinder lost its way in finding that defendant, knowing that Doe had a limited capacity to resist or consent, engaged in sexual contact with her for the purpose of sexually arousing or gratifying either person, in violation of R.C. 2907.05. Moreover, the testimony of Tate-James cannot be fairly interpreted as exonerating defendant, as she testified that defendant admitted that he inappropriately touched Doe but because he confessed the incident to their church elders, she did not believe it was necessary to prosecute him. Finally, although Doe is mentally challenged and could not provide dates or times, she appeared able to receive just impressions of facts and there was no challenge to her testimony under Evid.R. 601. This assignment of error is without merit.
 {¶ 59} Defendant's fifth assignment of error states:
 {¶ 60} "The court's decision finding the defendant to be a sexual predator was not supported by sufficient evidence and was against the manifest weight of the evidence."
 {¶ 61} A sexual predator, as defined in R.C. 2950.01(E)(1), includes:
 {¶ 62} "[A] person [who] has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses."
 {¶ 63} In order for the offender to be classified a sexual predator, the state must prove by "clear and convincing evidence that the offender has been convicted of a sexually oriented offense and that the offender is likely to engage in the future in one or more sexually oriented offenses." State v. Eppinger,91 Ohio St.3d 158, 163, 2001-Ohio-247, 743 N.E.2d 881 (emphasis in original). The trial court, in making this "weighty decision," must consider all relevant factors provided in R.C.2950.09(B)(3), including but not limited to the following:
 {¶ 64} "(a) The offender's or delinquent child's age;
 {¶ 65} "(b) The offender's or delinquent child's prior criminal or delinquency record regarding all offenses, including, but not limited to, all sexual offenses;
 {¶ 66} "(c) The age of the victim of the sexually oriented offense for which sentence is to be imposed or the order of disposition is to be made;
 {¶ 67} "(d) Whether the sexually oriented offense for which sentence is to be imposed or the order of disposition is to be made involved multiple victims;
 {¶ 68} "(e) Whether the offender or delinquent child used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting;
 {¶ 69} "(f) If the offender or delinquent child previously has been convicted of or pleaded guilty to, or been adjudicated a delinquent child for committing an act that if committed by an adult would be, a criminal offense, whether the offender or delinquent child completed any sentence or dispositional order imposed for the prior offense or act and, if the prior offense or act was a sex offense or a sexually oriented offense, whether the offender or delinquent child participated in available programs for sexual offenders;
 {¶ 70} "(g) Any mental illness or mental disability of the offender or delinquent child;
 {¶ 71} "(h) The nature of the offender's or delinquent child's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;
 {¶ 72} "(i) Whether the offender or delinquent child, during the commission of the sexually oriented offense for which sentence is to be imposed or the order of disposition is to be made, displayed cruelty or made one or more threats of cruelty;
 {¶ 73} "(j) Any additional behavioral characteristics that contribute to the offender's or delinquent child's conduct." See, also, State v. Eppinger, supra at 164; State v. Price,
Franklin App. No. 00AP-1434, 2001-Ohio-8874.
 {¶ 74} Here, the trial court noted that Doe has a limited mental capacity, that there is an eight or nine year age disparity between Doe and defendant, that defendant has a prior record which includes a conviction for attempted rape and gross sexual imposition, and that in the earlier matter and in the instant matter, defendant preyed upon more vulnerable females, thereby facilitating commission of the offenses. We concur with the trial court's assessment. The sexual predator determination is supported by clear and convincing evidence.
 {¶ 75} This assignment of error lacks merit.
Affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Karpinski, J., and Gallagher, J. Concur.
[1] It is the policy of this court to refrain from naming victims of sexual crimes unless necessary for the clarity of the opinion.