[Cite as *State v. Smith*, 2014-Ohio-709.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| v. | : | No. 13AP-194 |
| | | (C.P.C. No. 12CR-2300) |
| Marcus W. Smith, | : | |
| | | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on February 27, 2014

*Ron O'Brien*, Prosecuting Attorney, and *Valerie B. Swanson*, for appellee.

*Thompson Steward, LLC,* and *Lisa F. Thompson*, for appellant.

APPEAL from the Franklin County Court of Common Pleas

CONNOR, J.

{¶ 1} Defendant-appellant, Marcus W. Smith, appeals from a judgment of the Franklin County Court of Common Pleas finding him guilty, pursuant to bench trial, of three counts of robbery, in violation of R.C. 2911.02, all with gun specifications, and one count of having a weapon under disability, in violation of R.C. 2923.13. Because (1) sufficient evidence and the manifest weight of the evidence support defendant's convictions, and (2) defendant was not deprived of his constitutional right to effective counsel, we affirm.

I.    FACTS & PROCEDURAL HISTORY

{¶ 2} The State indicted defendant on May 14, 2012 on three counts of aggravated robbery, felonies of the first degree, three counts of robbery, felonies of the second degree, three counts of kidnapping, felonies of the first degree, one count of aggravated burglary, a felony of the first degree, and one count of theft, a felony of the

fifth degree, all with gun specifications, and one count of having a weapon while under disability, a felony of the third degree. Defendant waived his right to a jury trial, and agreed to have the matter tried to the bench.

{¶ 3} The events giving rise to the indictment occurred on February 16, 2012. At that time, defendant's sister, Danita Anderson, lived at 844 Oakland Park Avenue, in Columbus, Ohio, with her girlfriend, Whitney Surles, Whitney's mother, Charlotte Surles, and Whitney's brother, William Surles. Defendant had also been living at the Oakland Park residence for two-to-three months prior to the incident. Danita and Whitney shared a bedroom in the upstairs portion of the house, and defendant had his own bedroom in the upstairs portion of the house.

{¶ 4} On February 16, 2012, in the afternoon, defendant went to the Oakland Park residence and knocked on the door. Charlotte was lying on the couch in the living room, saw defendant at the door, and opened the door. Charlotte stated that she asked defendant how he was doing, and defendant "kind of mumbled something," such that Charlotte "could tell that by the look on his face that something was wrong." (Tr. 19.) Defendant walked past Charlotte "and proceeded to go up the steps to the room that he normally would sleep in." (Tr. 19.)

{¶ 5} Charlotte also went upstairs and knocked on Danita's and Whitney's door, to let them know defendant was there and that something seemed wrong with him. Charlotte stated that, as she turned to leave Danita's and Whitney's room, defendant was standing there, and "kind of peeked his head in" and said " 'You bitches need to come up out the bed. Come on. You know what it is.' " (Tr. 22.) Charlotte stated she turned to leave, but defendant pushed her back into the room and said " 'Nope. You all know what it is. Get up." (Tr. 22.)

{¶ 6} Charlotte, Danita, and Whitney all testified that defendant then began waiving a black handgun around and, as he had the "gun pointed toward [them]," he was screaming "Where's the fucking money at? Where's the money at?" (Tr. 77.) Whitney explained that defendant made all the women sit on the couch in the bedroom, and "had us with the gun to our head," while he kept asking " 'Where's the money?' " (Tr. 117.) The women tried to tell defendant they did not have any money, but defendant began to rummage around the room. Danita explained that defendant took money from "off the bed, the side of the dresser, which was in a wallet and under a pillow." (Tr. 80-

81.)  Charlotte testified that "any money that [defendant] found underneath the bed, the drawers, [defendant] just took it."  (Tr. 26.)  Charlotte attempted to tell defendant that she had money in her purse downstairs, and that she could go get it, but he said " 'No. Get back. Get the fuck back.' And kept pointing the gun at – between [her] and [her] daughter."  (Tr. 24.)

{¶ 7}  While defendant had the three women at gun point, Charlotte's blood pressure began to rise and she fell to the couch in the bedroom.  Danita and Whitney believed Charlotte was about to have a heart attack.  When defendant saw the "commotion" going on with Charlotte, he "pointed a gun" and said "Ms. Charlotte, sit the fuck down."  (Tr. 79.)  Defendant then left the bedroom and headed downstairs, and Danita followed defendant down the stairs.  Danita explained that defendant went down the steps to where "Ms. Charlotte had a dresser downstairs with medication and her purse and stuff like that," and began "digging through her things."  (Tr. 79.)  Danita said " '[Defendant], get the fuck out. Get out,' " and, as defendant "still had the gun toward [Danita]," Danita saw defendant take "some more money on top of that, and * * * [Charlotte's] prescription medication" from the dresser and the purse.  (Tr. 88.)  Defendant then "ran outside and had the gun pointed toward us at the house."  (Tr. 79.)  Danita stated that defendant was yelling, "[y]'all better not fucking come out. * * * Telling us to stay the fuck in the house."  (Tr. 79-80.)  Defendant eventually ran across the street and down Oakland Park Avenue.

{¶ 8}  Charlotte testified that defendant took about $4,000 from Danita's and Whitney's room.  Charlotte stated that a good portion of those funds belonged to her, explaining that she would give her money to Whitney because Whitney was "pretty good with money and keeping just valuable stuff."  (Tr. 27-28.)  Charlotte explained that, at the time, she had recently received her income tax return check for $2,600, and that she had also received $2,400 from a legal settlement.  Charlotte explained that, although she was not working in 2012, she had worked for Volunteers of America in 2011. Charlotte also explained that, after the incident, she informed the police that she was missing prescription medications which had been in her purse.

{¶ 9}  Danita and Whitney both testified that defendant had taken nearly $5,000 from the house.  Danita stated the money was a combination of funds from all three women's income tax returns, and Charlotte's money from the legal settlement.  Danita

stated that she worked at a daycare and at a warehouse; Whitney stated that she had seasonal employment at a warehouse.

{¶ 10} After the incident, Danita called her mother, Gertrude Stubbs, and told her that defendant had "just robbed [her] and Whitney * * *. He just had the gun up to our heads, threatening to kill us."  (Tr. 106.)  Gertrude testified that Danita had called her the day of the incident and "stated that [defendant] had came over and robbed them." (Tr. 151.)  Gertrude stated Danita told her that defendant had taken $8,000 from the Oakland Park residence.  Ms. Stubbs said she asked defendant to return the money, and defendant told her "[i]t wasn't money, that it was some pills."  (Tr. 156.)  Defendant told his mother he took "two handfuls of pills" from the Oakland Park residence.  (Tr. 162-63.)  Defendant's other sister, Josephina Anderson, testified that defendant told her he did not have a gun during the incident, and did not take any money, but "said he took some pills."  (Tr. 169.)  Gertrude noted she was not surprised to learn that defendant had taken pills and not money, stating: "Danita and Whitney – that's how they make their money."  (Tr. 161.)  Josephina also testified that Danita was "into" drugs and "sells drugs."  (Tr. 167.)

{¶ 11} The court issued its decision from the bench.  The court found the "idea that there was $8,000 worth of cash or $5,000 worth of cash in the room or in the house" was not worthy of belief.  The court, however, did not "believe that the victims in this case, Danita, Whitney and the Surleses would have allowed Mr. Smith to go up and take anything and just leave the way he left unless there was some threat of force being alleged there."  (Tr. 196.)  Thus, the court stated that "with respect to the money testimony, I don't necessarily find that credible."  (Tr. 196.)  The court noted that it did believe that defendant went "to the house and * * * he did take the pills, and * * * the only way he could have taken those would have been by force."  (Tr. 196-97.)  The court entered a finding of not guilty to the aggravated robbery charges and the theft charge; but entered a finding of guilty as to the robbery charges and attendant gun specifications, and the having a weapon under disability charge.  The court granted defendant's Crim.R. 29 motion and acquitted him of the aggravated burglary and the kidnapping charges.

{¶ 12} The court issued its final judgment entry imposing sentence on February 6, 2013.  The court sentenced defendant to 2 years on each robbery conviction,

and 24 months on the having a weapon under disability conviction, all to be served concurrently to each other. The court imposed an additional 3 consecutive years of actual incarceration on the firearm specification, bringing defendant's total term of imprisonment to 5 years.

## II. ASSIGNMENTS OF ERROR

{¶ 13} Defendant appeals, assigning the following errors:

FIRST ASSIGNMENT OF ERROR

The trial court violated Marcus W. Smith's rights to due process and a fair trial when it entered a judgment of guilt against him, when that finding was against the manifest weight of the evidence. Fifth and Fourteenth Amendments to the United States Constitution and Section 16, Article I of the Ohio Constitution.

SECOND ASSIGNMENT OF ERROR

The trial court violated Marcus W. Smith's rights to due process and a fair trial when it entered a judgment of guilt against him, when that finding was not supported by sufficient evidence, Fifth and Fourteenth Amendments to the United States Constitution and Section 16, Article I of the Ohio Constitution.

THIRD ASSIGNMENT OF ERROR

Marcus W. Smith's attorney provided him with the ineffective assistance of counsel and violated his right to due process and a fair trial where defense counsel failed to object to, and elicited the admission of inadmissible evidence. Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Sections 10 and 16, Article I of the Ohio Constitution.

## III. FIRST & SECOND ASSIGNMENTS OF ERROR – MANIFEST WEIGHT AND SUFFICIENCY

{¶ 14} Defendant's first and second assignments of error assert that neither sufficient evidence nor the manifest weight of the evidence support defendant's convictions.

{¶ 15} Whether evidence is legally sufficient to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). Sufficiency is a test of

adequacy. *Id.* The evidence is construed in the light most favorable to the prosecution to determine whether a rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus; *State v. Conley*, 10th Dist. No. 93AP-387 (Dec. 16, 1993). When reviewing the sufficiency of the evidence the court does not weigh the credibility of the witnesses. *State v. Yarbrough,* 95 Ohio St.3d 227, 2002-Ohio-2126, ¶ 79.

{¶ 16} The court found defendant guilty of robbery with a specification and of having a weapon under a disability. R.C. 2911.02 provides, in relevant part, that "[n]o person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall" either "[h]ave a deadly weapon on or about the offender's person or under the offender's control"; or "[i]nflict, attempt to inflict, or threaten to inflict physical harm on another." R.C. 2911.02(A). R.C. 2941.145 provides for a three-year mandatory prison term if the offender "had a firearm on or about the offender's person * * * while committing the offense and displayed the firearm, brandished the firearm, * * * or used it to facilitate the offense." R.C. 2923.13 provides, in relevant part, that "no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if * * * [t]he person * * * has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense of violence."

{¶ 17} The evidence demonstrated that, while inside Danita's and Whitney's room, defendant pulled out a handgun, pointed it at the victims, and stated " 'where is the money.' " (Tr. 24; 77.) The women testified that defendant took money from various locations throughout the room. Whitney stated that during the incident defendant "kept putting the gun to all of our heads." (Tr. 119.) The evidence further demonstrated that defendant went downstairs and took pills and money out of Charlotte's purse and dresser, and that he "still had the gun toward [Danita]" while he was digging through the dresser and purse. (Tr. 79; 88.) Defendant's mother and sister testified that defendant admitted to taking pills during the robbery. The State also submitted a December 18, 2009 judgment entry adjudicating defendant a delinquent minor for having committed the offense of felonious assault in violation of R.C. 2903.11. (State's exhibit H.) Defendant's mother admitted that defendant had gone to juvenile prison for felonious assault.

{¶ 18} The above evidence was sufficient to support defendant's convictions for robbery with a gun specification, as the evidence demonstrated that defendant had a deadly weapon, a gun, under his control while committing or attempting to commit a theft offense. The evidence was also sufficient to convict defendant of having a weapon while under a disability, as the evidence demonstrated that defendant was adjudicated a delinquent child for the commission of a felony offense of violence, and that he had a firearm.

{¶ 19} Defendant asserts that the evidence was insufficient to establish that he robbed the victims with a firearm. Defendant notes that the court used defendant's admission to his mother that he had taken pills as "the basis of the court's determination that Mr. Smith stole *something*," but notes that the court was not convinced that defendant robbed the women of cash. (Emphasis sic.) (Appellant's brief, 13.) Defendant's theft of the pills, however, was sufficient to support the theft element of the robbery offense. *Compare State v. Blackburn*, 10th Dist. No. 12AP-217, 2012-Ohio-6229, ¶ 12.

{¶ 20} Defendant asserts that "[t]here was no evidence that [he] used force, the threat of force, or a deadly weapon to steal the pills from Charlotte Surles' purse if that was in fact where he got them from." (Appellant's brief, 13.) Danita testified, however, that defendant had the gun pointed towards her while he was taking money and pills out of Charlotte's purse and dresser. Defendant also argues that, "[s]ince the court believed Mrs. Stubbs' testimony that Mr. Smith said he stole only the pills, it follows that Mr. Smith's denial of use of a firearm to his mother should have been believed by the court as well." (Appellant's brief, 13.) The trier of fact, however, "may believe or disbelieve any witness or accept part of what a witness says and reject the rest." *State v. Antill*, 176 Ohio St. 61, 67 (1964). Accordingly, the court was entitled to believe the testimony from Danita, Whitney, and Charlotte indicating that defendant had a firearm while committing the offense, but to disbelieve the evidence from Josephina and Gertrude indicating that defendant denied having a firearm while committing the robbery. Accordingly, the evidence was sufficient to support defendant's convictions.

{¶ 21} Defendant also asserts that his convictions are against the manifest weight of the evidence. Sufficiency of the evidence and manifest weight of the evidence are distinct concepts; they are "quantitatively and qualitatively different." *Thompkins at*

386. When presented with a manifest weight argument, we engage in a limited weighing of evidence to determine whether sufficient competent credible evidence permits reasonable minds to find guilt beyond a reasonable doubt. *Conley*; *Thompkins* at 387 (noting that "[w]hen a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony"). In the manifest weight analysis, the appellate court considers the credibility of the witnesses and determines whether the jury " 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). Determinations of credibility and weight of the testimony remain within the province of the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. The jury may take note of any inconsistencies and resolve them accordingly, "believ[ing] all, part, or none of a witness's testimony." *State v. Raver*, 10th Dist. No. 02AP-604, 2003-Ohio-958, ¶ 21, citing *Antill*.

{¶ 22} Defendant asserts that the evidence demonstrates that the victims "were lying about not only the fact that cash was taken, but also about the presence of a gun." (Appellant's brief, 8.) The trial court, however, was in the best position to judge the credibility of the witnesses, and found the witnesses' testimony that defendant used a gun during the incident to be credible. Defendant further asserts that "[t]he court's determination that Mr. Smith did not commit Aggravated Robbery (theft by threat of force), yet found that he robbed Charlotte Surles of pills and that he used a gun to commit the theft is incongruent." (Appellant's brief, 9.) R.C. 2911.01 provides, in relevant part, that an individual commits the crime of aggravated robbery, if "in attempting or committing a theft offense," the individual has "a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it." R.C. 2911.01(A)(1). While the trial court's finding defendant not guilty of the aggravated robbery charges, but guilty of the robbery with a gun specification charges, is inconsistent, such inconsistency is not grounds for setting aside the verdict.

{¶ 23} "Consistency between verdicts on several counts of an indictment is unnecessary where the defendant is convicted on one or some counts and acquitted on

others; the conviction generally will be upheld irrespective of its rational incompatibility with the acquittal." *State v. Trewartha*, 165 Ohio App.3d 91, 2005-Ohio-5697, ¶ 15 (10th Dist.) "Each count of a multicount indictment is deemed distinct and independent of all other counts, and thus inconsistent verdicts on different counts do not justify overturning a verdict of guilt." *Id. See also State v. Lovejoy,* 79 Ohio St.3d 440 (1997), paragraph one of the syllabus (noting that "[t]he several counts of an indictment containing more than one count are not interdependent and an inconsistency in a verdict does not arise out of inconsistent responses to different counts, but only arises out of inconsistent responses to the same count").

{¶ 24} Accordingly, because the aggravated robbery and robbery charges were distinct and independent charges, a consistent determination between the separate charges was unnecessary. As the evidence demonstrated that defendant robbed the residents of the Oakland Park residence at gun point, and that defendant admitted to stealing two handfuls of pills from the residence, we cannot find that the court clearly lost its way in convicting defendant of robbery with a gun specification and of having a weapon while under disability.

{¶ 25} Based on the foregoing, defendant's first and second assignments of error are overruled.

## IV. THIRD ASSIGNMENT OF ERROR – INEFFECTIVE ASSISTANCE

{¶ 26} Defendant's third assignment of error asserts that he was denied the effective assistance of trial counsel, in violation of his rights under the Sixth and Fourteenth Amendments to the United States Constitution. Defendant argues that his counsel rendered ineffective assistance by failing to object to inadmissible hearsay testimony.

{¶ 27} In order to succeed on the claim of ineffective assistance of counsel, defendant must satisfy a two-prong test. *Strickland v. Washington,* 466 U.S. 668, 687 (1984). Defendant must show that (1) defense counsel's performance was so deficient that he was not functioning as the counsel guaranteed under the Sixth Amendment to the United States Constitution, and (2) that defense counsel's errors prejudiced defendant, depriving him of a trial whose result is reliable. *Id.* To establish that counsel's performance was deficient, defendant must prove that counsel's performance fell below an objective standard of reasonable representation. *State v. Jackson,* 107 Ohio St.3d 53,

2005-Ohio-5981, ¶ 133.  To show prejudice, the appellant must establish that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  *State v. Hale,* 119 Ohio St.3d 118, 2008-Ohio-3426, ¶ 204.  The failure to make either showing defeats a claim of ineffective assistance of counsel.  *State v. Bradley,* 42 Ohio St.3d 136, 143 (1989), quoting *Strickland* at 697.  In evaluating counsel's performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances the challenged action 'might be considered sound trial strategy.' "  *Strickland* at 689, citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955).

{¶ 28}  Defendant asserts that his trial counsel rendered ineffective assistance by failing to object to statements made by Charlotte, Whitney, and Danita "regarding their portions of conversations supposedly held with [defendant]."  (Appellant's brief, 15.) Defendant also asserts that "defense counsel permitted Ms. Stubbs and Josephina Anderson to freely testify about their portions of conversations supposedly held with [defendant]." (Appellant's brief, 15.)  Defendant asserts that "[h]ad counsel objected to the improper testimony during the State's case-in-chief, and not elicited it during the presentation of evidence by the defense, there is a reasonable probability that the proceedings would have been different because it's likely that the judge would not have heard the tainted evidence." (Appellant's brief, 15-16.)

{¶ 29} Defendant fails to identify any particular inadmissible hearsay statements which his counsel failed to object to, and has thus failed to demonstrate that his counsel's performance was deficient.  *See State v. Bey*, 85 Ohio St.3d 487, 504 (1999) (where defendant failed "to cite any specific failure to object," the court noted that by "failing to cite examples of asserted ineffectiveness" the defendant failed "to demonstrate either his counsel's deficient performance or prejudice arising from the deficient performance").  Moreover, "failure to object to error, alone, is not enough to sustain a claim of ineffective assistance * * *."  *State v. Holloway*, 38 Ohio St.3d 239, 244 (1988).  "Because '[o]bjections tend to disrupt the flow of a trial, [and] are considered technical and bothersome by the fact-finder,' Jacobs, Ohio Evidence (1989), at iii-iv, competent counsel may reasonably hesitate to object in the jury's presence." *State v. Campbell*, 69 Ohio St.3d 38, 53 (1994).  Furthermore, "in a bench trial, the trial

court is presumed to have relied only upon admissible evidence." *State v. Warren*, 8th Dist. No. 83823, 2004-Ohio-5599, ¶ 47, citing *State v. Davis*, 63 Ohio St.3d 44 (1992). *See also State v. Turner*, 10th Dist. No. 04AP-364, 2004-Ohio-6609, ¶ 24.

{¶ 30} Defendant also fails to identify any particular prejudice resulting from the admission of these unidentified hearsay statements. "[D]efendant must demonstrate more than vague speculations of prejudice to show that counsel was ineffective." *Turner* at ¶ 27, citing *State v. Otte*, 74 Ohio St.3d 555, 565 (1996). Given the strength of the evidence of defendant's guilt presented at trial, and as defendant has failed to identify a particular hearsay statement which caused him actual prejudice, we cannot find that the result of the proceedings would have been different had counsel objected to the unidentified hearsay statements. *See State v. Chandler,* 10th Dist. No. 10AP-972, 2011-Ohio-3485, ¶ 16 (no prejudice from admission of officer's alleged hearsay testimony, where eyewitness testimony overwhelmingly linked defendant to crimes).

{¶ 31} Defendant has failed to satisfy his burden under *Strickland*. As such, defendant's third assignment of error is overruled.

## V.    DISPOSITION

{¶ 32} Having overruled defendant's three assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BROWN and KLATT, JJ., concur.

————————