[Cite as *State v. Lowe*, 2012-Ohio-907.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 25862 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| ANDREW W. LOWE | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 10 08 2125 |

## DECISION AND JOURNAL ENTRY

Dated: March 7, 2012

DICKINSON, Judge.

## INTRODUCTION

{¶1}   Andrew Lowe went to see his estranged wife at her request, but ended up in an argument with her and her mother.  He was charged with twelve counts, including felonious assault, violating a protection order, endangering children, and domestic violence against his wife, mother-in-law, and stepson.  Following a bench trial, he was convicted of six of the counts, including charges of violating a protection order and domestic violence against his wife and stepson.  He has appealed.  This Court affirms because he has not shown that he was denied effective assistance of counsel or otherwise deprived of a fair trial.

## BACKGROUND

{¶2}   Mr. and Mrs. Lowe have been married since 2008.  In July 2010, when the scuffle that gave rise to these charges occurred, Mrs. Lowe was nine months pregnant with their second daughter.  Mrs. Lowe also has a son from a prior relationship.  Although the couple had been

living with Mrs. Lowe's parents, by July, they were living separately, and Mr. Lowe was subject to a civil protection order that Mrs. Lowe had obtained in January of that year. At the time of this incident, Mr. Lowe was living with his parents in Dalton, Ohio, while Mrs. Lowe and the children were living with her parents in Akron.

{¶3}   Despite the active protection order, on July 24, 2010, Mrs. Lowe called her husband and asked him to go shopping for diapers and formula for their daughter. Mrs. Lowe was home with her seven-year-old son, one-year-old daughter, and her mother, Jackie Hobbs. Mrs. Hobbs does not drive, and Mrs. Lowe had recently been ordered to stay in bed and not lift anything due to complications of the pregnancy. Mrs. Lowe's father was at work.

{¶4}   Shortly after Mr. Lowe arrived at the Hobbses' house, he and Mrs. Lowe started arguing over the ownership of some videogames. There was a scuffle, and both Mr. and Mrs. Lowe ended up on the floor. Mrs. Lowe and Mrs. Hobbs testified that, when the argument started, they repeatedly asked Mr. Lowe to leave, but he refused. Mrs. Lowe testified that, when he grabbed the games, she tried to stop him, and he pushed her backwards into a cabinet. As she was falling, she grabbed his shirt to try to break her fall. His shirt ripped, and he landed on top of her on the floor. She said that he was trying to twist away toward the door and repeatedly elbowed her in the stomach. She screamed that he was hurting her stomach and hitting the baby, but he would not stop. Mrs. Lowe testified that, when her son came over and tried to pull Mr. Lowe off of her, Mr. Lowe backhanded him in the eye. According to Mrs. Lowe, when Mrs. Hobbs tried to pull him off of her, he grabbed Mrs. Hobbs's forearm, squeezed it, and shoved her backwards. At that time, Mrs. Lowe tried to hold onto Mr. Lowe for fear of what he might do to her son or her mother. Mr. Lowe broke away from Mrs. Lowe, who was still on the floor, and ran out the door with the videogames. He slammed the door with enough force to break its

window. Mrs. Lowe immediately locked the door and called the police. She said that Mr. Lowe soon returned and tried to get into the house, but took off again when he saw that she was on the phone with police.

{¶5} Mrs. Hobbs testified fairly consistently with her daughter. She said that it appeared that Mr. Lowe knocked his wife over when he was trying to push past her to run off with the games. They both ended up on the floor, with Mr. Lowe on top of Mrs. Lowe. She said that Mr. Lowe repeatedly elbowed his wife in the stomach while they were in a heap on the floor. She saw her grandson come in screaming and run away again holding his eye, but she did not see Mr. Lowe hit the boy. She testified that, when she tried to help her daughter, Mr. Lowe grabbed her forearm and squeezed, causing bruising. He soon ran off with the videogames, breaking the window in the door on the way out. She also testified that Mr. Lowe returned briefly while Mrs. Lowe was on the phone with police, but he did not come in the house.

{¶6} Mr. Lowe testified that he drove to Akron at his wife's request, but needed gas money to get home. When the women refused to give him any money except what was necessary to buy things for the baby, he started asking about his other property that Mrs. Lowe had not returned to him. When she claimed that everything was hers, he decided to take back some videogames he had given her to sell. He testified that, when he reached for the games, Mrs. Lowe attacked him, knocking him to the floor. He said that she ran at him and pushed him back into a tote full of dishes. According to Mr. Lowe, Mrs. Lowe "was throwing [him] around. She was pushing [him] everywhere." She pinned him down on the floor so that he was unable to get away. He was unable to do much to defend himself because he was being careful not to hit her or her mother. He said he believes his stepson was in the living room while this scuffle was going on in the dining room area. He denied hitting the child or seeing him holding his eye. Mr.

Lowe testified that Mrs. Lowe got up and walked away after a moment while he calmly spoke with Mrs. Hobbs. Seconds later, Mrs. Lowe "came flying back out into the dining room and was pushing me around again. And I was trying to - - I was, like, facedown on the floor trying to get up and have the games in my arms [while Mrs. Lowe was on top of me]." At that point, Mrs. Hobbs came over and tried to get the games out of his hand. Mr. Lowe testified that, when he was able to "drag [his] way out of the house" with the videogames, he went directly home.

## PRIOR CONVICTION

{¶7} Mr. Lowe's fourth assignment of error is that the trial court incorrectly enhanced count six, a domestic violence charge, based on a prior conviction that was constitutionally infirm because he had not knowingly waived his right to counsel. Under Section 2945.75(B)(3), "[i]f the defendant claims a constitutional defect in any prior conviction, the defendant has the burden of proving the defect by a preponderance of the evidence." Mr. Lowe did not raise this issue with the trial court. As we discuss below, there is no evidence in the record to support his argument that his earlier domestic violence conviction was uncounseled. Mr. Lowe's fourth assignment of error is overruled.

## INEFFECTIVE ASSISTANCE OF COUNSEL

{¶8} Mr. Lowe's first assignment of error is that his lawyer was ineffective for failing to challenge the use of his prior domestic violence conviction to enhance count six in this case, failing to ask Mr. and Mrs. Lowe a number of questions, failing to call certain witnesses, and failing to raise various objections. To establish that his lawyer was ineffective, Mr. Lowe "must show (1) deficient performance by counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that, but for counsel's errors, the proceeding's result would have been different." *State v. Hale*, 119 Ohio St.

3d 118, 2008–Ohio–3426, at ¶ 204 (citing *Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984); *State v. Bradley*, 42 Ohio St. 3d 136, paragraph two of the syllabus (1989)). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691.

{¶9} Mr. Lowe has argued that his lawyer was ineffective for failing to argue that his earlier domestic violence conviction could not be used to enhance count six in this indictment. He has argued that, when he pleaded no contest to the earlier charge, he was not represented by a lawyer and he had not waived his right to counsel. There is nothing in the record, however, to support Mr. Lowe's argument. Without evidence in the record indicating that his first conviction was uncounseled, this Court cannot determine whether his trial lawyer's failure to raise the argument had any effect on the judgment. *See Strickland v. Washington*, 466 U.S. 668, 691 (1984).

{¶10} Mr. Lowe has argued that his lawyer was ineffective for failing to call various witnesses at trial. He believes that his sister, his JAG lawyer, and his parents would have been able to shed some light on his injuries and his actions after the incident and add something about his wife and mother-in-law. There is nothing in the record to indicate what any of these people would have said had they been called to testify. Therefore, this Court cannot determine whether the outcome of the trial would have been affected by their testimony. He has argued that the fact that his lawyer did not call any additional witnesses prejudiced him and warrants a new trial, but he has not cited any authority for the proposition that defense lawyers must call witnesses in addition to the defendant in a criminal case. There is nothing in the record to support Mr.

Lowe's argument that his lawyer's performance was deficient because she did not call these witnesses.

{¶11} Mr. Lowe has also argued that his lawyer should have investigated the circumstances surrounding a motion for protective order that Mrs. Lowe filed in Florida in 2009. There is no evidence in the record to show what steps Mr. Lowe's lawyer took to investigate any previous motion or what testimony Mrs. Lowe would have given on that topic had she been asked. As this argument depends on matters outside the record, this Court cannot determine the issue on direct appeal. *See State v. Cole*, 2 Ohio St. 3d 112, 114 (1982).

{¶12} Mr. Lowe has argued that his lawyer should have cross-examined Mrs. Lowe about her grounds for filing the 2010 protection order and the specific circumstances surrounding the physical struggle of July 24, 2010. There is no evidence in the record to show that Mrs. Lowe's answers to questions on these topics would have supported Mr. Lowe's case. Without such evidence, this Court cannot determine whether his lawyer's failure to ask questions on these topics affected the outcome of the trial.

{¶13} Mr. Lowe has argued that the trial court incorrectly admitted 27 separate hearsay statements without objection from his lawyer. He has cited eight statements by Mrs. Hobbs that, he claims, are hearsay statements to which his lawyer did not object. The bulk of those statements are non-hearsay as they are Mr. Lowe's statements and, therefore, admissions by a party opponent under Rule 801(D)(2)(a) of the Ohio Rules of Evidence. As to the remaining few references, Mr. Lowe has not explained how he was prejudiced by his lawyer's failure to object. Mr. Lowe has also argued that his lawyer failed to object to 18 hearsay statements by the police officer who responded to the call. Even assuming that his lawyer's performance was deficient, Mr. Lowe has not shown that he was prejudiced by the admission of any hearsay. App. R.

16(A)(7). Further, "[j]udges are trained and expected to disregard any extraneous influences in deliberations." *State v. Davis*, 63 Ohio St. 3d 44, 48 (1992). Thus, when the judge acts as the trier of fact, as she did in this case, it is presumed she will consider only relevant, competent, and admissible evidence. *Id.* Mr. Lowe has not overcome that presumption.

{¶14} Mr. Lowe has also argued that his lawyer was ineffective for failing to object to the admission of various photographs and exhibits, but he has not explained why the exhibits were inadmissible or prejudicial. App. R. 16(A)(7). Mr. Lowe has argued that his lawyer was ineffective for failing to object to the trial court's unilateral stipulation to the expertise of Mrs. Lowe's treating physician. When the prosecutor asked the doctor to explain the definition of an attending physician, the trial court interjected, "[c]an we just cut to the facts, that he's an OB/GYN, and we can stipulate that I know what an attending is?" Mr. Lowe has not offered any argument or evidence to show that an objection was warranted or that it would have changed the outcome of the trial.

{¶15} Mr. Lowe has argued that his lawyer's cross-examination of the doctor was deficient for failing to emphasize the fact that he testified that there was no evidence of injury to Mrs. Lowe or the unborn baby. The trial court questioned the doctor on this topic and, in the end, acquitted Mr. Lowe of causing serious physical harm to his wife. Mr. Lowe has not shown that he was prejudiced by his lawyer's cross-examination of Mrs. Lowe's doctor.

{¶16} Mr. Lowe has argued that his lawyer should have examined how Mr. Lowe's post-traumatic stress disorder might have affected his mental state or his actions on July 24, 2010. There is nothing in the record to suggest that, had the lawyer asked further questions on that topic, the result of the trial would have been different. *See State v. Mitchell*, 9th Dist. No.

24730, 2009-Ohio-6950, at ¶ 20. Therefore, Mr. Lowe has not shown that he was denied effective assistance of counsel. His first assignment of error is overruled.

JUDICIAL INTERFERENCE

{¶17} Mr. Lowe's second assignment of error is that the trial court denied him a fair trial through judicial misconduct. He has focused his argument on various instances of the trial court interrupting the lawyers to clarify testimony or hurry things along. He has also complained that the trial court impeached him and interrogated him a biased manner. As his lawyer did not object to the trial court's questioning at a time when it could have been corrected, he has argued plain error on appeal. Crim. R. 52(B); *State v. Batson*, 85 Ohio St. 3d 418, 425 (1999). He has also acknowledged that, because he submitted to a bench trial, the court had greater flexibility in questioning witnesses. *Mentor v. Brancatelli*, 11th Dist. No. 97-L-011, 1997 WL 772949 at *4 (Dec. 5, 1997). He has argued, however, that the trial court's conduct denied him his constitutional right to a fair and impartial trial.

{¶18} "An alleged error 'does not constitute a plain error . . . unless, but for the error, the outcome of the trial clearly would have been otherwise.'" *State v. Batson*, 85 Ohio St. 3d 418, 425 (1999) (quoting *State v. Long*, 53 Ohio St. 2d 91, paragraph two of the syllabus (1978)). "Notice of plain error . . . is to be taken with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St. 2d 91, 97 (1978).

{¶19} Under Rule 614(B) of the Ohio Rules of Evidence, a trial court may interrogate witnesses "in an impartial manner[.]" Impartiality will be presumed absent a "showing of bias, prejudice, or prodding of a witness to elicit partisan testimony[.]" *State v. Batson*, 85 Ohio St. 3d 418, 426 (1999) (quoting *Jenkins v. Clark*, 7 Ohio App. 3d 93, 98 (2d Dist. 1982)). "A trial

court's interrogation of a witness is not deemed partial for purposes of [Evidence Rule] 614(B) merely because the evidence elicited during the questioning is potentially damaging to the defendant." *State v. Blankenship*, 102 Ohio App. 3d 534, 548 (12th Dist. 1995).

{¶20} "When a trial judge is acting as a finder of fact, the judge is necessarily weighing the credibility of each witness while the witness is giving testimony. No finder of fact can avoid doing so. As long as the trial judge does not badger or otherwise intimidate the witness, we can see no prejudice when the trial judge articulates the process by which [s]he is assessing the credibility of the witness, when there is no jury to be influenced by it." *State v. Armstrong*, 2d Dist. No. 13498, 1993 WL 294834 at *6 (Aug. 6, 1993). A trial judge who pushes a defendant or other defense witness on cross-examination, may be benefitting rather than prejudicing the defendant by letting him know what problems the judge may have with the testimony at a time when the defendant may yet do something about it. *Id*.

{¶21} Mr. Lowe has complained that the trial judge "prejudicially testified to the explanation of evidence" when the trial court interrupted the prosecutor's redirect of Mrs. Lowe. The prosecutor said that she was attempting to clarify something on redirect, but the judge explained that would not be necessary because she understood the point the prosecutor wanted to clarify. The point was not favorable to Mr. Lowe, and he has argued that the trial court "prejudicially testified" by summarizing the earlier testimony, but he has not argued that the trial court inaccurately summarized Mrs. Lowe's testimony. He also has not explained why it was prejudicial to him that the trial court short-circuited the state's redirect of the victim.

{¶22} Mr. Lowe has argued that the trial court improperly asked Mrs. Lowe an open-ended question, took judicial notice of the expertise of a witness, and "brow-beat Mr. Lowe's trial counsel[.]" Following the cross-examination of Mrs. Lowe, the judge asked her whether

there was anything she would like to say. Mrs. Lowe responded that she did not want this to happen, she tried to be a good wife, and gave him two children. Mr. Lowe has not explained how the absence of that question and answer would have changed the outcome of this trial. As discussed above, the judge cut short the prosecutor's questioning of Mrs. Lowe's treating physician regarding his qualifications and the definition of an attending physician. There is no evidence in the record to show that Mr. Lowe had any valid basis for objecting to this time-saving measure. He has also complained that, after the trial court granted his lawyer's Criminal Rule 29 motion for acquittal on the felonious assault charge, the judge interrupted his lawyer when she mentioned the remaining counts. The judge said, "[d]on't bother." His lawyer responded, "I was going to say we're ready to proceed with the case." It does not appear that Mr. Lowe's lawyer had intended to move for acquittal on the remaining counts, so he was not prejudiced by the judge's impatience.

{¶23} Mr. Lowe has complained that the trial court repeatedly impeached him. During cross-examination, when the prosecutor was having trouble phrasing a set-up for an impeachment question, the trial judge interrupted and asked Mr. Lowe, "is it your position that they just made all this up?" Mr. Lowe responded, "[y]es, ma'am." The judge quickly cut off the prosecutor's next attempt at a question, which was an effort to confirm that Mr. Lowe believed his wife and mother-in-law concocted this story in the six minutes it took police to arrive. Without objection from the defense, the trial court cut off the state's line of questioning, ruling that it was argument, not inquiry. It is unclear to this Court how this interference with the State's presentation could have prejudiced Mr. Lowe.

{¶24} Mr. Lowe also pointed to an exchange with the trial court following his redirect examination. The trial court asked him a series of questions aimed at understanding his

educational and professional background. The judge's questions seemed focused on evaluating his credibility in regard to his work history and whether he had exchanged messages with other women on social networking sites while he was deployed with the Army in Iraq and Kuwait. Again, Mr. Lowe denied his wife's accusations and testified that she was making up the entire story in order to ruin his life.

{¶25} The judge gave Mr. Lowe an opportunity to explain his side of the story about why his wife had obtained the civil protection order, but he responded that he "ha[d] no clue." He repeatedly told the court that he had no clue why his wife was telling lies about him. In light of the fact that he denied the veracity of his wife's allegations that he spent his days playing videogames, the judge asked him why he thought his wife and her mother would make up this story. He responded, "I think they're trying to ruin my life, ma'am." When the judge asked why his wife filed for divorce, he said he had no clue. He said they made up these allegations because they don't like him. The judge then responded, "Why would she not like you? You were doing everything. Working around the house, trying to help out when you didn't have a job. Got fired for being late to work which I - - you know, I don't know what that is all about. But nonetheless, here you are, working, working, working, all the time for her. Is that what you're telling me?" He said he agreed with that. On a later redirect examination, his lawyer asked him whether there was a divorce pending and he responded that there was not. The judge then interjected, "Well, why don't you file? I mean, my God, there is this woman trying to ruin you."

{¶26} After the defense rested its case, and the parties were discussing the admission of exhibits, the judge again interjected, "I think they both should run to get divorced, don't you?" When Mr. Lowe's lawyer asked if the court wanted to hear closing arguments, the judge said,

"[n]ot really, but - - . . . [i]f you feel you have to[.]" The court then allowed both parties to argue.

{¶27} Although the judge's sarcasm was not helpful, a review of the record reveals that the judge more frequently interrupted the state's presentation than that of the defense. Mr. Lowe waived his right to a trial by jury knowing that this case would be decided largely on the basis of the credibility of the eye-witnesses to the event. Although the judge's questioning of Mr. Lowe reveals that she did not seem to believe his version of the incident, it also gave him several opportunities to explain himself and potentially persuade her to believe him. His testimony that he had no clue why his wife and mother-in-law would fabricate the story, however, did not convince the judge that his version of events was more credible. It is not unreasonable for the fact finder not to believe that, as an experienced soldier, Mr. Lowe was unable to safely remove himself from the situation when his full-term pregnant wife physically attacked him. It is not unreasonable to believe that Mr. Lowe's testimony about twice being tackled by his wife was less credible than the relatively consistent testimony of Mrs. Lowe and Mrs. Hobbs.

{¶28} Further, Mr. Lowe admitted that he violated the protection order he knew was in effect when he went to the house that day. The law does not take into account the fact that his wife invited him over. And the trial court found him not guilty of several charges, including those stemming from the accusation that he had struck his stepson. Although the court acknowledged that the boy's eye was apparently injured during the ruckus, it was not firmly convinced that Mr. Lowe knowingly caused the injury. The court found him guilty of domestic violence for knowingly causing his stepson to believe that he would cause imminent physical harm to a family or household member, but acquitted him of domestic violence for knowingly causing harm to the boy. The court also found him not guilty of domestic violence against Mrs.

Hobbs because she testified that her injury was due to her attempts to pull Mr. Lowe off of her daughter and she did not testify that she had feared for her safety or for that of her daughter. The court dismissed the felonious assault charge for insufficient evidence of serious physical harm to Mrs. Lowe and found him not guilty of both counts of endangering children. The court also imposed a sentence that allowed Mr. Lowe the opportunity to serve only the mandatory six months of prison time required for the felony domestic violence charge.

{¶29} For the most part, the trial court's questioning of the witnesses was focused on clarifying the factual circumstances of the incident and evaluating the credibility of the witnesses. Our review of the entire record indicates that the trial court's questioning of the witnesses did not rise to the level of partiality or inappropriate advocacy. To the extent that any questions were otherwise improper, they were harmless in light of the fact that there was no jury present. *See State v. Armstrong*, 2d Dist. No. 13498, 1993 WL 294834 at *1 (Aug. 6, 1993). Although the judge made several unnecessary sarcastic comments, there is no evidence that she acted in a way that prejudiced Mr. Lowe. She gave him a full and fair opportunity to present his evidence and argument and considered all the evidence before rendering a decision. Mr. Lowe's second assignment of error is overruled.

## CUMULATIVE EFFECT

{¶30} Mr. Lowe's third assignment of error is that the trial court denied him a fair trial through the admission of 27 hearsay statements, ineffective assistance of counsel, and judicial misconduct. Mr. Lowe has not demonstrated that his lawyer was ineffective or that the trial court deprived him of a fair trial through interference or other misconduct. The question is whether the admission of hearsay denied him a fair trial. This Court has determined that many of the 27 statements Mr. Lowe has pointed out are not hearsay. Even if a number of the statements

14

are inadmissible hearsay, they were admitted without objection, and did not cause plain error, especially in light of the fact that there was no jury present. Crim. R. 52(B). If "there is no reasonable possibility that the evidence may have contributed to the conviction," then an error in the admission of evidence is harmless. *State v. DeMarco*, 31 Ohio St. 3d 191, 195 (1987). "[I]n such cases there must be overwhelming evidence of the accused's guilt or some other indicia that the error did not contribute to the conviction." *Id.*

{¶31} In this case, the fact that it was a bench trial is some indication that hearsay did not contribute to the convictions. Further, Mr. Lowe was found not guilty of several charges because the trial court was not convinced that he knowingly hurt his stepson or his mother-in-law. If the trier of fact believed the testimony of Mrs. Lowe and Mrs. Hobbs, then there was overwhelming evidence to support the convictions. The trial court wrote in its journal entry that Mrs. Hobbs's testimony was "completely credible." If any inadmissible hearsay was admitted, it was harmless under the circumstances. Mr. Lowe's third assignment of error is overruled.

## CONCLUSION

{¶32} Mr. Lowe's assignments of error are overruled. He has not shown that he was deprived of a fair trial or the effective assistance of counsel. The judgment of the Summit County Common Pleas Court is affirmed.

Judgment affirmed.

_____

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

CLAIR E. DICKINSON
FOR THE COURT

BELFANCE, P.J.
CONCURS

CARR, J.
CONCURS IN JUDGMENT ONLY

APPEARANCES:

TIMOTHY R. VANSICKLE, Attorney at Law, and STEPHEN D. BITTINGER, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.